604 So.2d 799 (1992)
Matthew MARSHALL, Appellant,
v.
STATE of Florida, Appellee.
No. 75406.
Supreme Court of Florida.
July 16, 1992.
Rehearing Denied September 28, 1992.
*801 Richard L. Jordanby, Public Defender and Louis G. Carres, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Douglas J. Glaid, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Matthew Marshall appeals his conviction for first-degree murder and imposition of the death sentence.[1] We affirm the conviction and the sentence of death.
*802 Marshall and the victim, Jeffrey Henry, were both incarcerated at the Martin Correction Institute on November 1, 1988, when witnesses heard muffled screams and moans emanating from Henry's cell and observed Marshall exiting the cell with what appeared to be blood on his chest and arms. Within a few minutes, Marshall reentered the cell, and similar noises were heard. After the cell became quiet, Marshall again emerged with blood on his person. Henry was found dead, lying in his cell facedown with his hands bound behind his back and his sweat pants pulled down around his ankles to restrain his legs. Death was caused by blows to the back of his head.
Marshall was charged with first-degree murder. His defense at trial was that he killed Henry in self-defense. Marshall claimed that Henry was a "muscle man" for several inmates who operated a football pool. When Marshall tried to collect his winnings from the inmates, they told him to get the money from Henry. Marshall claims he entered Henry's cell only to collect his winnings but that Henry refused to pay, and that Henry then attacked him, so he fought back.
The jury found Marshall guilty of first-degree murder and recommended a sentence of life imprisonment. The judge rejected the jury's recommendation and imposed a sentence of death, finding in aggravation: (1) that the murder was committed by a person under sentence of imprisonment; (2) that the defendant was previously convicted of violent felonies; (3) that the murder was committed while the defendant was engaged in the commission of or an attempt to commit a burglary; and (4) that the murder was especially heinous, atrocious, and cruel. The judge found in mitigation that the defendant's behavior at trial was acceptable and that the defendant entered prison at a young age. The judge specifically rejected as mitigation that the defendant's older brother influenced him and led him astray to run the streets and break the law, and that his mother caused him to believe he would suffer no negative consequences for his bad behavior. The judge concluded that facts supporting a conclusion that the mitigating circumstances did not outweigh the aggravating circumstances were "so clear and convincing that no reasonable person could differ."

Guilt Phase
Marshall raises numerous issues on appeal, some of which, while not warranting reversal, do merit discussion.[2] Marshall first claims that the court erred in permitting an inmate to testify identified only by number, not by name. The court instituted this procedure in an effort to protect the identity of the witness, who feared reprisals from the inmate population for becoming a "snitch" by testifying for the State.[3] Marshall argues that his right to cross-examination was infringed and that the jury was allowed to infer that he personally posed a threat to the witness because the jury was never apprised of the reason for the witness's anonymity. The record reveals that the court stated that it would not offer a curative instruction on its own initiative but that it would entertain a request by the defense; defense counsel declined. Because the defense was affirmatively presented with the opportunity to *803 request a curative instruction and chose not to do so, Marshall cannot now complain that the jury was never informed of the reason for the number procedure.
Furthermore, the defense always knew the true name and identity of this witness, and therefore the fact that the witness testified as "Number 29" did not hamper cross-examination or the defense's ability to investigate the background of the witness. Cf. Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (right to cross-examination significantly infringed where defense was not provided name or address of witness). Contrary to Marshall's assertions, we do not find the jury was led to believe that a threat of reprisal from Marshall was the reason for the witness testifying anonymously. Cf. Ponticelli v. State, 593 So.2d 483 (Fla. 1991) (fear of reprisal from general inmate population unlikely to imply witness feared reprisal from defendant). We therefore find Marshall is not entitled to relief on this issue.
Marshall next argues that the trial court erred in instructing the jury on manslaughter. The relevant part of the instruction reads as follows:
Before you can find the defendant guilty of manslaughter, the State must prove the following elements beyond a reasonable doubt:
1. (Victim) is dead.
2. The death was caused by the
(a) act of (defendant).
(b) procurement of (defendant).
(c) culpable negligence of (defendant).
Fla.Std.Jury Inst. (Crim.) F.S. 782.07. The instructions inform the judge to "[g]ive 2(a), (b), or (c) depending upon allegations and proof." Id. In this case, the parties agreed that 2(b) did not apply to the facts here. After much discussion on the remaining sections, the judge settled on a hybrid:
Okay. I will give paragraph two then of the manslaughter as follows. "The death was caused by the culpably negli  culpably negligent act of Matthew Marshall." And not give in the alternative. That actually, if anything, is in favor of the Defendant because it  it raises the burden of proof that the State must shoulder in order to convict. Okay. Others?
While we agree that the instruction calls for the giving of the sections in the alternative, we find any error harmless because, as the trial judge noted, requiring the State to prove "the culpably negligent act" as opposed to simply "the act" inures to the benefit of the defendant.
Marshall's next claim is that the trial court erred in instructing the jury that self-defense was unavailable to felony murder and third-degree murder where the underlying felonies were respectively burglary and aggravated battery. We find no error. Under section 776.041(1), Florida Statutes (1987), self defense is legally unavailable to a person who "[i]s attempting to commit, committing, or escaping from the commission of, a forcible felony." Section 776.08 specifically defines "forcible felony" to include both burglary and aggravated battery. The meaning of the plain words is clear, and the trial court correctly refused the instruction. Cf. Perkins v. State, 576 So.2d 1310 (Fla. 1991) (holding drug trafficking was not a forcible felony within the meaning of section 776.041(1) where it was not included in statutory definition or otherwise included use or threat of force as an element of the offense).
In his next claim, Marshall argues that the trial court erred in denying Marshall an instruction on aggravated assault in connection with the self-defense instruction. In light of the evidence in this case, we do not find the trial court abused its discretion in declining to give the instruction. See Robinson v. State, 574 So.2d 108, 111 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991).
Marshall next alleges the trial court erred in not declaring a mistrial after the prosecution conceded that it had failed to link evidence of the alleged motive. The State's theory of the murder included the assertion that Marshall's motive in killing Henry was to vindicate animosity between Henry and another inmate, David Ingles. *804 During trial, the State presented testimony about the illicit activities of Ingles and a fight between Ingles and Henry that occurred several weeks prior to the murder. The defense objected to this evidence as being irrelevant, but the court admitted it following the State's assurances that relevance would be shown. However, at the close of its case, the State conceded that this evidence had to be stricken because it had failed to link the evidence to Marshall or to the murder. The trial court denied Marshall's motion for a mistrial but instructed the jury to disregard all that evidence. Marshall argues that the court should have granted a mistrial because the curative instruction was inadequate to overcome the prejudicial effects of this irrelevant evidence. The record reveals, however, that references to Ingles and his animosity toward Henry were minimal,[4] and that the prosecutor never argued to the jury its theory that Marshall killed Henry on behalf of Ingles. We therefore find the court's instruction to disregard the evidence of Ingles sufficient to cure any prejudice.
We next reject Marshall's claim that the trial court abused its discretion in admitting a photograph taken of the victim's head during the autopsy. Such photographs were admissible to assist the medical examiner in explaining the nature of the wounds and the manner in which they were inflicted. See, e.g., Bush v. State, 461 So.2d 936, 939 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986). During his testimony, the medical examiner used the photo at issue to "illustrate the rather prominent area of contusion discoloration underneath the forehead." While we do not find the small polaroid photo unduly prejudicial in this case, see id.; Jennings v. State, 512 So.2d 169 (Fla. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988), we caution trial judges to scrutinize such evidence carefully for prejudicial effect, particularly when less graphic photos are available to illustrate the same point.
We agree with Marshall's claim that the trial court erred in admitting evidence of gambling slips found in Marshall's cell six months after the murder and evidence that Marshall's nickname in prison was "Uzi." Such items bore no relevance to the murder in this case. However, we find that on this record the admission of this evidence was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Marshall next asserts that the trial court erred in refusing to poll prospective jurors to determine whether they had read an article about the murder appearing in the Palm Beach Post. On the second day of jury selection, the article in question appeared in the morning paper. Defense counsel requested the court to poll the venire to determine whether anyone had read the article. The judge declined to poll the prospective jurors, choosing instead to follow his regular routine:
THE COURT: So I'm not going to do that. However, I'm going to continue to ask the same questions of additional jurors that I've asked in the past. That is, do you know anything about this case from any source? Have you read any newspaper articles, come in contact with any TV coverage and the like  questions similar in nature to that. Uh, and if a juror responds yes, I'll ask when and where.
In addition, the trial judge instructed the venire on several occasions to avoid any contact with news media coverage or other discussion of Marshall's case. Later during the trial, the court did inquire of the jury as to whether it had any contact with *805 two articles appearing in the Palm Beach Post and received a negative response. Although we agree with Marshall that trial courts should poll juries whenever they may have been exposed to prejudicial news coverage, we find any error in this case harmless in view of the procedures and care taken by the court to ensure that no seated jurors were exposed. See Derrick v. State, 581 So.2d 31, 35 (Fla. 1991).
We reject Marshall's claim that the trial court erred in denying his motion for judgment of acquittal. A motion for judgment of acquittal should only be granted when "the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Lynch v. State, 293 So.2d 44, 45 (Fla. 1974). The record in this case reveals sufficient evidence of either felony murder or premeditated murder from which the jury reasonably could have found Marshall guilty.
Finally, we reject Marshall's claim that the prosecutor made comments vouching for the credibility of state witnesses during his opening statement that were so prejudicial as to require a new trial. These comments included the State's assertion that the State had overcome great obstacles in getting inmates to "truthfully tell what has occurred," and that inmates operate under a "code of silence" but that they have "a residual core of humanity." The record shows that the defense neither objected nor requested a curative instruction nor moved for mistrial. Because these remarks do not constitute fundamental error, this issue is not cognizable in this appeal. E.g., Carter v. State, 560 So.2d 1166, 1168 (Fla. 1990); Bassett v. State, 449 So.2d 803, 807 (Fla. 1984).

PENALTY PHASE
Turning to the penalty phase, Marshall first alleges numerous errors in the judge's sentencing order require a new penalty phase.[5] We agree that the trial court erred in its consideration of a prior conviction for escape. Defense counsel had expressly waived the mitigating circumstance of no significant prior criminal history, and a conviction for escape does not qualify as a statutory aggravating factor of "another capital felony or of a felony involving the use or threat of violence" under section 921.141(5)(b), Florida Statutes (1987). Lewis v. State, 398 So.2d 432, 438 (Fla. 1981). However, in light of Marshall's other nine prior violent felony convictions, we find the error harmless beyond a reasonable doubt. See DiGuilio.
Marshall next argues that the trial court erred in finding the murder to be heinous, atrocious, or cruel. The record shows that Marshall attacked the victim twice, and that the victim was at least partially conscious during the second attack. He was struck six times on the back of the head, and witnesses heard him plead for mercy. We find this circumstance supported by the evidence beyond a reasonable doubt.
Likewise, we find the circumstance of murder committed during the course of a burglary to have been proven beyond a reasonable doubt. Even if Marshall initially entered Henry's cell with consent for the purpose of collecting a gambling debt, the only reasonable inference apparent from Marshall's reentering the cell was that he intended to resume his attack on the victim.
Marshall next alleges that the trial court abused its discretion in sentencing Marshall to death where the jury had made a recommendation of life imprisonment. It is well settled in Florida that a judge imposing sentence in a capital case must accord the jury recommendation great weight. E.g., Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). Where a jury has recommended a life sentence, the court must follow that recommendation unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Id. Where the record contains no evidence supporting *806 a life recommendation, the trial court does not err in declining to follow that recommendation.
In this case, the record contains insufficient evidence to reasonably support the jury's recommendation of life. Marshall's father was unable to attend the trial, but the defense and prosecution stipulated that he would have testified that Marshall did well in school until his early teens when his older brother influenced him to run the streets and break the law; that Marshall's mother did not discipline Marshall and allowed him to believe there would be no consequences for his behavior; and that Marshall's father loved him and requested a life sentence for his son. The trial court determined these facts were not mitigating, but did find Marshall's behavior at trial as well as his entering prison at a young age to be mitigating. We find no error in the court's assessment of this mitigation and conclude that it does not provide a reasonable basis for the jury's recommendation of life in this case. Even viewing this mitigation in the light most favorable to Marshall, it pales in significance when weighed against the four statutory aggravating circumstances, including Marshall's record of violent felonies consisting of kidnapping, sexual battery, and seven armed robberies.
Furthermore, defense counsel's argument composed largely of a negative characterization of the victim does not provide a reasonable basis for the jury's life recommendation. Moreover, contrary to Marshall's assertion, the facts surrounding the murder do not suggest that the murder was committed in self defense or in a fit of rage. The witnesses heard muffled screams and moans emanating from the victim's cell and observed Marshall leaving the cell with what appeared to be blood on his chest and arms. Within a few minutes, Marshall reentered the cell and similar noises were again heard. The victim was found lying face down with his hands bound behind his back and his ankles were restrained. The victim received no less than twenty-five separate wounds and blood was sprayed and splattered about the cell. Death was caused by blows to the back of his head. Nothing in these facts supports the notion that Marshall acted in self defense or that he simply killed the victim in the heat of a fight. We thus conclude that the trial court did not abuse its discretion in finding the facts supporting the death sentence to be "so clear and convincing that no reasonable person could differ." See Tedder, 322 So.2d at 910.
Finally, we do not find the death sentence disproportionate in this case. The facts of this case, including the four strong aggravating circumstances compared to the weak mitigation, render the death sentence appropriate and proportional when compared to other cases. See, e.g., Freeman v. State, 563 So.2d 73 (Fla. 1990); Lusk v. State, 446 So.2d 1038 (Fla. 1984).
Accordingly, we affirm Marshall's conviction for first-degree murder and the resulting death sentence.
It is so ordered.
OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs in part and dissents in part with an opinion, in which SHAW and KOGAN, JJ., concur.
BARKETT, Chief Justice, concurring in part and dissenting in part.
I concur in the affirmance of guilt but dissent from the affirmance of the death sentence because I believe a reasonable basis for the jury's recommendation of life exists and that the trial court therefore abused its discretion in rejecting that recommendation.
As the majority correctly notes, the jury's recommendation carries great weight and should be followed unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). In this case reasonable people could differ as to the appropriateness of the death penalty, and the court's override was therefore improper. See Ferry v. State, 507 So.2d 1373, 1376-77 (Fla. 1987).
In addition to considering the stipulated testimony of Marshall's father, the jury *807 could have reasonably viewed the evidence of the murder in a light more favorable to Marshall. In his closing argument to the jury, defense counsel conceded that the aggravating circumstances of murder committed while under a sentence of imprisonment and previous conviction of a violent felony were established, but strongly argued against the existence of the other aggravators presented by the State. He argued that the death penalty should be reserved only for the worst murderers and worst aggravation. He pointed out that the evidence showed that Marshall and Henry had no prior problems with each other and had socialized together at the prison. Defense counsel emphasized that the circumstances of the crime indicate no prior plot or plan to kill since Marshall entered the cell unarmed and the murder was committed with a battery pack belonging to and found within the cell of the victim. He argued that offensive wounds on Henry's hands showed that the murder occurred during the course of a fight and that Henry was a violent person. He also noted that Henry's skull was not fractured and his facial bones weren't broken, indicating that Marshall did not intend to torture the victim or inflict additional injuries once he was rendered unconscious. Defense counsel also pointed out that the murder was not committed for financial gain. Finally, defense counsel argued that Marshall's age and background mitigate the offense as well. He pointed out that a life sentence of 25 years on top of the sentence of 46 years that Marshall was already serving would keep Marshall in prison for a substantial period of time.
I believe this view of the evidence provided a reasonable basis upon which the jury could recommend a life sentence. While the jury may not have believed that Marshall acted in self defense to excuse the killing, it could have reasonably inferred from the evidence that a fight erupted between Marshall and Henry and that Marshall killed Henry in a fit of rage. It is also likely that the jury rejected some of the aggravators found by the judge or assigned them minimal weight. See Hallman v. State, 560 So.2d 223 (Fla. 1990). Additionally, the jury could have reasonably found mitigation in Marshall's family background, see, e.g., McCampbell v. State, 421 So.2d 1072 (Fla. 1982), and determined, based on the nature of the crime and the circumstances surrounding it, that the death penalty was not the appropriate penalty in this case. See Hallman, 560 So.2d at 226-27. As this Court has stated in the past, "[t]he death penalty, unique in its finality and total rejection of the possibility of rehabilitation, was intended by the legislature to be applied `to only the most aggravated and unmitigated of most serious crimes.'" Holsworth v. State, 522 So.2d 348, 354-55 (Fla. 1988) (quoting State v. Dixon, 283 So.2d 1, 7 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)). We have emphasized that the jury's recommendation "is entitled to great weight, reflecting as it does the conscience of the community." Id. 522 So.2d at 354. Although some may not view the mitigation as compelling in this case, I cannot say that no reasonable person could have recommended a life sentence for Matthew Marshall. See, e.g., Hallman, 560 So.2d at 226-27; Tedder.
Accordingly, I dissent.
SHAW and KOGAN, JJ., concur.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
[2] We reject without discussion the following claims alleging reversible error: (1) that Marshall was prevented from cross-examining witness Number 29 regarding bias; (2) that Marshall was prevented from eliciting from a prison official that inmates were allowed to visit each other's cells; (3) that the trial court abused its discretion in denying Marshall's pretrial motion for appointment of private counsel; (4) that the trial court erred in failing to bring in additional jurors for the venire when the only potential black juror was struck for cause; (5) that the trial court erred in striking for cause a juror who was opposed to the death penalty; (6) that the trial court erred in admitting hearsay evidence; and (7) that the trial court should have granted Marshall's motion for particulars.
[3] Other inmate witnesses who were assigned numbers were never called to testify. One inmate, Michael Lane, Henry's cellmate, testified under his own name, but merely identified objects belonging to Henry and stated that he woke Henry up before leaving for breakfast on the morning of the murder. A former inmate, Frank Calabria, also testified under his own name, but mentioned that he was no longer incarcerated.
[4] The evidence relating to Ingles occurred during the testimony of: (1) Inspector Riggins, who related Ingles's cell assignment on May 9, 10, 11, 1989, and stated that Ingles had told him that Henry set him up for administrative confinement by putting marijuana in his cell; (2) Inmate 29, who testified that Ingles sold drugs in the prison, and that conflict existed between Henry and Ingles stemming from an incident where Henry had taken drugs from Ingles without paying him; (3) Captain John Wilds, who testified regarding a fight between Ingles and Henry; and (4) Frank Calabria, a former inmate who stated in response to a defense question that Ingles and Marshall did not associate in the prison.
[5] We reject Marshall's claims that the death penalty statute and the aggravating circumstances are unconstitutional. Nor do we find that the trial court abused its discretion in refusing to admit evidence of prior violent acts of the victim.