976 So.2d 1071 (2007)
Matthew MARSHALL, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-2379.
Supreme Court of Florida.
December 6, 2007.
Rehearing Denied February 29, 2008.
*1073 Neal A. Dupree, Capital Collateral Regional Counsel, and Melissa Minsk Donoho, Special Assistant CCR Counsel, Southern Region, Fort Lauderdale, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, Florida, and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
Matthew Marshall, a prisoner under sentence of death, appeals the trial court's denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the trial court's denial of postconviction relief.

PROCEEDINGS TO DATE
Marshall was convicted and sentenced to death for the 1988 murder of Jeffrey Henry. Marshall v. State, 604 So.2d 799, 801-02 (Fla.1992) (Marshall I). After the penalty-phase proceedings were concluded, the jury recommended that Marshall receive a life sentence. Id. at 802. However, the trial judge imposed a sentence of death. Id. The facts of the case are set forth in our opinion in Marshall's direct appeal of his conviction and sentence. See id. On direct appeal, we affirmed the first-degree murder conviction and the death sentence imposed by the trial judge over the jury's recommendation. Id. at 801.
Subsequently, Marshall filed a postconviction motion raising twenty-seven claims. See Marshall v. State, 854 So.2d 1235, 1238 & n. 2 (Fla.2003) (Marshall II). The trial court held an evidentiary hearing on four of the claims but summarily denied others. Id. at 1239. On appeal, we affirmed the trial court's denial of postconviction relief on all but one issue: Marshall's claim of juror misconduct. Id. at 1253. In this claim, Marshall alleged that racial remarks and jokes as well as the jury's consideration of nonrecord materials deprived him of a fair and impartial trial. Id. at 1239. He attached three sworn affidavits to his postconviction motion in support of his claim. Id. Two of the affidavits were from jurors in his trial, and the other was from an attorney, Ronald Smith. Id. We concluded that the juror affidavits "discussed matters pertaining to the jury's deliberations." Id. More specifically, however, Smith's affidavit stated that he received a telephone call from a woman who claimed that she had served on the jury in Marshall's case in which she told him:
(1) some jurors decided Marshall was guilty before the trial was over; (2) some jurors told racial jokes about Marshall; (3) some jurors announced during the guilt phase that they were going to vote for a guilty verdict and life sentence because they wanted Marshall to return to prison to kill more black inmates; and (4) some jurors, despite the trial judge's orders forbidding it, read and discussed articles concerning the trial.
*1074 Id. Smith was unable to recall the name of or otherwise identify the woman who called his office. Id.[1]
On appeal, we held that the trial court erred in summarily denying Marshall's juror misconduct claim. Id. at 1244. We found that the alleged juror misconduct discussed in Smith's affidavit required further proceedings. See id.[2] We further observed that "it appears that evidence could be submitted that could identify the purported juror who contacted Mr. Smith to ascertain whether such misconduct took place." Id. at 1242. We remanded for an evidentiary hearing on the claim, but with limiting instructions:
The scope of the hearing on remand is limited to attempting to obtain the identity of the female juror who spoke to Mr. Smith, to interview that juror, and then to conduct further interviews only if the court determines that there is a reasonable probability of juror misconduct. Moreover, the trial court may wish to conduct most or all of the questioning of the jurors, thereby ensuring that unnecessarily intrusive questions will not be asked of the jurors and to prevent questioning on matters that inhere in the verdict. Cf. People v. Hedgecock, 51 Cal.3d 395, 272 Cal.Rptr. 803, 795 P.2d 1260, 1274 (1990) (discussing steps trial court can take to avoid a chilling effect on jury deliberations when holding evidentiary hearing on juror misconduct claim).
Marshall II, 854 So.2d at 1253.
After remand for an evidentiary hearing, the circuit court directed counsel to investigate the whereabouts of the jurors. The court further decided to question all of the jurors who could be located and not just the female ones. It was discovered that two of the jurors were deceased, leaving ten jurors to be questioned. Subsequently, at an initial hearing on March 24, 2004, the circuit court first questioned six of the surviving jurors who were subpoenaed to appear. The court advised each of the jurors that neither the individual juror nor any of the other jurors was in trouble. The court then asked each juror if he or she was a juror in Marshall's case. Each of the six jurors responded affirmatively. The court then asked each juror:
Are you the juror who phoned attorney Ronald B. Smith, who is a lawyer in Stuart, and said basically two things. First, that you were related to one of Mr. Smith's clients and also that you were a juror in the case and that you observed other jurors doing things that were improper including making racial jokes and also failing to follow the judge's instructions that the jurors should not come into any contact with news media coverage during the trial?
Each of the six jurors responded in the negative. The court also asked each juror if he or she knew who the person was that called Smith. Each again responded in the negative. After all six of the jurors were questioned individually, the court dismissed the jurors with agreement by the State and Marshall.
Subsequently, and before the next scheduled hearing on the issue, Marshall *1075 filed an emergency motion seeking to add a witness to the list of those to be questioned at the hearing. The motion alleged that during the attempt to locate the remaining witnesses, an investigator found the ex-wife of one of the surviving jurors, and requested that the court permit the ex-wife to testify. Attached to the motion was a sworn affidavit from Debra Thomason stating that her former husband, juror Coy Thomason, had discussed the case with her and others, even though he knew he was not supposed to talk about the case; he followed the case in the newspapers and carried newspaper articles about the case in his briefcase; and he "made it clear" to Debra Thomason and others that he thought that Marshall was "guilty from the getgo," because of Marshall's status as a prison inmate. The affidavit also alleged that Debra Thomason had read an article in the newspaper about the possibility of jurors going back to court regarding the issue of juror misconduct in the case and that the reference to "[t]he racial jokes and the sharing of information from newspaper articles brought my ex husband's face immediately to mind."
On May 19, 2004, the circuit court held a hearing to interview the remaining jurors from the case. The court again advised each juror that the juror was not in trouble. The court also asked each the three questions previously asked the other jurors in the March hearing. Each of the jurors affirmed participation as a juror in Marshall's case but responded negatively to the other two questions, as had been the case with the other jurors questioned in the earlier proceedings. Neither Marshall nor the State offered any additional questions. After the court excused the jurors, counsel and the court addressed Marshall's emergency motion to add a witness. After discussion, the court denied the motion but suggested that Marshall might be able to file an additional postconviction motion, saying, "I really hesitate to go outside of the  if you will, the traditional procedure," apparently alluding to this Court's instructions on remand.
On June 2, 2004, Marshall filed a motion to interview juror Thomason, based upon the affidavit of Debra Thomason. The motion alleged that "Mr. Marshall has demonstrated good cause for being granted permission to interview juror Coy Lee Thomason. Fla. R. Civ. Pro. 1.431(h)." Marshall also filed a successive and amended motion to vacate the judgment of conviction and sentence based upon juror Thomason's alleged misconduct. The postconviction motion further alleged that Debra Thomason had died on June 4, 2004.
At a June 30, 2004, hearing on the pending motions, the State suggested that the court question juror Coy Thomason as it had the other jurors. Marshall's counsel requested that she be allowed to interview Coy Thomason before the court questioned him. The court declined that request, explaining:
I don't want to restrict a complete examination of Mr. Thomason, but I  I really feel that the procedure that the Supreme Court mandated  or I guess suggested strongly, as to the earlier interviews  although the issue was different, I think the idea is the same. So I'm going to follow that procedure.
The court then issued an order granting the motion to interview Coy Thomason in part, stating that pursuant to the terms of Florida Rule of Civil Procedure 1.431(h), the court would conduct the initial questioning of the juror and would allow subsequent questioning by counsel as it deemed appropriate.
On June 10, 2005, the court held a hearing during which the court and the parties agreed to conduct a two-part interview of juror Thomason, one part devoted to the issues on remand from this Court and one part devoted to the newly alleged juror *1076 misconduct issue raised in the successive motion for postconviction relief. The court first questioned juror Thomason and advised him that he was not in trouble. The court then asked the three questions that had been asked of all of the other jurors who had been interviewed. Thomason responded that he was a juror in Marshall's case but that he was not the juror who called Smith and that he did not know who that person was and "didn't even know it happened." In response to Thomason's answer to the third question, the court asked, "Did you know anything about this before I just started talking about it?" Thomason said he did not. The court then asked Thomason two additional questions. The court first asked, "While you were a juror trying the Matthew Marshall case, did you ever discuss the case with your ex-wife Debra Thomason or any people at your place of work?" Thomason said that he did not. Next, the court asked, "Did you ever read any newspaper articles regarding the Matthew Marshall case while you were a juror on the case?" Thomason replied that he did not. The court then had Thomason step outside the courtroom.
With Thomason absent, Marshall's counsel proposed five additional questions for the court to ask Thomason. The State did not object to the first question proposed but objected to the remaining questions. In response, Marshall's counsel withdrew one of the questions, the trial court agreed to rephrase one of the questions, and the court sustained the State's objection to the other two questions. The court then interviewed Thomason again and asked, "First . . . did you at anytime carry a briefcase with you containing articles of the Matthew Marshall case?" Thomason replied that he did not. Next, the court asked, "Did anyone tell you or have you read any newspaper articles or heard anything on radio or television about why you were being called here today?" Again Thomason responded in the negative. Thomason was then excused.
On September 28, 2005, the trial court entered a final order denying relief on all of the claims of juror misconduct in the pending motions for postconviction relief. In its order, the court concluded: (1) the female juror who called Smith cannot be identified; (2) no further juror interviews are necessary; (3) no proof exists that juror Thomason violated the court's instructions and engaged in jury misconduct; and (4) "[n]o reasonable probability exists that any of the acts charged of juror misconduct occurred." This appeal followed.

APPEAL
Marshall raises three issues on appeal: (1) whether the trial court erred by failing to adequately question former jurors about alleged jury misconduct and by restricting the scope of its inquiry; (2) whether the trial court erred by refusing to take Debra Thomason's testimony and requiring Marshall to file a successive motion for postconviction relief and by failing to expand the scope of the inquiry of the former jurors; and (3) whether the trial court erred by not allowing counsel to informally interview former juror Coy Thomason and by limiting the manner and scope of the questioning of Thomason.

Questioning of Former Jurors
Marshall first argues that the trial court erred by failing to adequately question former jurors about alleged jury misconduct and by restricting the scope of its inquiry.
Florida appellate courts have uniformly held that a court's decision on whether to allow an interview of jurors after trial is subject to review for an abuse of discretion. See, e.g., Boyd v. State, 910 So.2d 167, 178 (Fla.2005) (concluding that the trial court did not abuse its discretion *1077 by refusing to question the jury about allegations made by a friend of the defendant that she had overheard jurors discussing extrajudicial information during the guilt phase of a capital trial); Baptist Hosp. of Miami, Inc. v. Maler, 579 So.2d 97, 101 (Fla.1991) (holding that a trial court abused its discretion in authorizing an inquiry of jurors based on matters that inhered in the verdict); Shere v. State, 579 So.2d 86, 94-95 (Fla.1991) (finding that a trial court did not abuse its discretion in refusing to grant a capital defendant's motion to interview the jury, which was based on allegations contained in an anonymously written letter to a newspaper); Melrose Nursery, Inc. v. Collinsworth, Alter, Nielson, Fowler & Dowling, Inc., 832 So.2d 891, 892 (Fla. 3d DCA 2002) (recognizing that trial courts have broad discretion to grant or deny a motion to interview jurors); Roland v. State, 584 So.2d 68, 70 (Fla. 1st DCA 1991) (stating that the appropriate standard of review for a trial court's ruling on a motion to interview jurors is abuse of discretion); Schofield v. Carnival Cruise Lines, Inc., 461 So.2d 152, 155 (Fla. 3d DCA 1984) (explaining that the standard of review for an appellate court is whether the trial court abused its broad discretion to permit or disallow jury interviews). In the instant case, the trial court's discretion was specifically limited by the express directions on remand issued by this Court when it determined that while further proceedings should be conducted on Marshall's claim of juror misconduct, those proceedings should be limited and sharply focused on the matters set out in the Smith affidavit.
In our opinion, we specifically instructed the trial court about the appropriate scope of the hearing on remand by directing that "[t]he scope of the hearing on remand is limited to attempting to obtain the identity of the female juror who spoke to Mr. Smith, to interview that juror, and then to conduct further interviews only if the court determines that there is a reasonable probability of juror misconduct." Marshall II, 854 So.2d at 1253. In remanding for an evidentiary hearing on the claim of juror misconduct, we further directed that "the trial court may wish to conduct most or all of the questioning of the jurors, thereby ensuring that unnecessarily intrusive questions will not be asked of the jurors and to prevent questioning on matters that inhere in the verdict." Id. A review of the record below reveals that the trial court conducted further proceedings and interviewed the jurors in strict accordance with our instructions.
The trial court interviewed all of the surviving ten jurors from Marshall's trial. Further, even though the trial court did not have an opportunity to interview juror Cunningham, who was deceased, this juror had previously supplied an affidavit alleging possible juror misconduct, but that affidavit contained no reference to the type of misconduct alleged in the Smith affidavit. See id. at 1239-40 (discussing juror Cunningham's allegations). Moreover, as this Court directed, the court's questioning of each juror focused on attempting to discover the identity of the person who spoke to attorney Ronald Smith. While Marshall argues that the trial court should have directly asked the former jurors about the allegations of juror misconduct based on the allegations of the unidentified caller in Smith's affidavit, such an inquiry would have contravened our specific instructions that the trial court first attempt to find and interview the unidentified juror who had called Smith before proceeding further. See id. at 1253. In addition, the trial court questioned all of the surviving jurors, rather than limiting the questioning to the female jurors, one of whom had allegedly called Smith.
As we noted in our prior Marshall II opinion, there is a very fine line that the *1078 courts must walk in investigating claims of juror misconduct without invading the confidentiality of juror deliberations. We attempted to maintain that line in our prior decision to allow further proceedings in this case while cautioning the trial court to exercise care in conducting those proceedings. We can hardly fault the trial court here for adhering to our instructions. Accordingly, we find that the trial court did not abuse its discretion in interviewing the former jurors in compliance with our mandate.

Thomason Affidavit
Marshall next argues that the trial court erred by refusing to take Debra Thomason's testimony, requiring Marshall to file a successive motion for postconviction relief, and failing to expand the scope of the inquiry of the former jurors.
Just as the trial court's conduct of juror interviews is subject to an abuse of discretion standard of review, the trial court's denial of Marshall's emergency motion to add Debra Thomason as a witness is subject to an abuse of discretion standard of review. See, e.g., Boyd, 910 So.2d at 178; Maler, 579 So.2d at 101; Shere, 579 So.2d at 94-95; cf. Way v. State, 760 So.2d 903, 916 (Fla.2000) (finding that the trial court did not abuse its discretion in concluding that the testimony of witnesses was beyond the scope of the remand). Likewise, the trial court's failure to expand the scope of the inquiry of the remaining jurors based on the allegations in Debra Thomason's affidavit is also subject to an abuse of discretion standard of review, as is the trial court's determination that Marshall should file a successive motion for postconviction relief. Cf. Arbelaez v. State, 898 So.2d 25, 42-43 (Fla.2005) (reviewing for an abuse of discretion a trial court's rejection of a supplemental motion filed after an evidentiary hearing held on remand but before a ruling, because the motion raised arguments beyond the scope of this Court's remand); Huff v. State, 762 So.2d 476, 481 (Fla.2000) (stating that the standard of review for a trial court's determination regarding a motion to amend a postconviction motion is whether there was an abuse of discretion).
We conclude that the trial court's refusal to take Debra Thomason's testimony at the May 19, 2004, hearing was not an abuse of discretion. The scope of the hearing was not just limited by the type of misconduct alleged in the Smith affidavit, it was also expressly limited by this Court's cautionary directions in Marshall II. As discussed above, we explicitly instructed the trial court that "[t]he scope of the hearing on remand is limited to attempting to obtain the identity of the female juror who spoke to Mr. Smith, to interview that juror, and then to conduct further interviews only if the court determines that there is a reasonable probability of juror misconduct." Marshall II, 854 So.2d at 1253. The Thomason affidavit did not relate to the identity of the juror who contacted Ronald Smith but rather raised a separate issue of possible juror misconduct. In denying Marshall's motion, the trial court expressed concern about adhering to this Court's instructions about the scope of the hearing on remand. In light of our explicit instructions, we conclude the trial court's decision to restrict the hearing to finding that juror was not an abuse of discretion.
Similarly, given this Court's explicit limitation about the scope of the hearing on remand, we conclude the trial court's attempt to adhere to our mandate by requiring Marshall to file a successive motion raising a new and separate issue of alleged juror misconduct was not an abuse of discretion. See Arbelaez, 898 So.2d at 42-43. We note the trial court did conduct a hearing on the new claim and questioned juror Thomason about the allegations in *1079 Debra Thomason's affidavit. Further, we find no error in the trial court's resolution of this claim given juror Thomason's responses to the court's questions and the absence of any other evidence to sustain the claim. Of course, the trial court could not have reasonably anticipated that Debra Thomason would die before a hearing on the successive motion could be held.
Finally, we conclude the trial court's failure to expand the scope of the inquiry of the other former jurors to include the Thomason claim was not an abuse of discretion. Marshall argues that the court should have expanded the scope of the inquiry of the former jurors based on the allegations in Debra Thomason's affidavit. Significantly, Marshall did not seek to interview jurors, other than Coy Thomason, about the allegations contained in Debra Thomason's affidavit. Moreover, the Thomason affidavit did not explicitly allege that Coy Thomason spoke with other jurors about the media reports, prematurely deliberated Marshall's guilt with other jurors, brought articles into the jury room, or discussed any racial matters with other jurors. Finally, as we have repeatedly noted, the trial court's actions were specifically limited by this Court's directions on remand.
Accordingly, we hold that the trial court did not abuse its discretion by refusing to take Debra Thomason's testimony, in requiring Marshall to file a successive motion for postconviction relief, and in not expanding the scope of the inquiry of the former jurors.

Examination of Coy Thomason
Marshall next argues that the trial court erred by not allowing counsel to question former juror Coy Thomason before the hearing and by thereafter limiting the manner and scope of the questioning of Thomason.
As discussed above, a trial court's decision whether to allow an interview of jurors after trial is subject to review for an abuse of discretion. See, e.g., Boyd, 910 So.2d at 178; Maler, 579 So.2d at 101; Shere, 579 So.2d at 94-95. Moreover, a trial court's decision regarding the manner and scope of questioning of jurors also is subject to review for an abuse of discretion. See, e.g., Melrose Nursery, Inc., 832 So.2d at 892-93; Sconyers v. State, 513 So.2d 1113, 1117 (Fla. 2d DCA 1987) ("If the trial court finds that a further interview of a juror or jurors is warranted, then it should conduct such interview(s), in its discretion, as would be necessary to determine the merits of appellant's allegations.").
Marshall asserts that the trial court abused its discretion because parties may engage in prehearing discovery relating to a postconviction motion. In support of this argument, Marshall cites our decision in State v. Lewis, 656 So.2d 1248, 1249-50 (Fla.1994). Contrary to Marshall's implication, Lewis does not suggest that parties have an unqualified entitlement to engage in prehearing discovery relating to a postconviction motion. Rather, the availability of discovery in a postconviction case is a matter firmly within the trial court's discretion. See id. at 1250.
Marshall also suggests that because different rules govern informal juror interviews by counsel[3] and formal juror interviews by a court,[4] the trial court abused its discretion by not allowing counsel to informally interview Coy Thomason. However, Marshall did not file a notice of intent to interview juror Coy Thomason; *1080 Marshall filed a motion to interview Thomason and cited to Florida Rule of Civil Procedure 1.431(h) in support of the motion.[5] Importantly, the trial court's order granting the motion in part clearly states that the interview would be conducted by the court pursuant to rule 1.431(h). Rule 1.431(h) provides that "[i]f the interview is permitted, the court may prescribe the place, manner, conditions, and scope of the interview." Fla. R. Civ. P. 1.431(h). Furthermore, this Court and other courts have found it to be within a court's discretion to conduct the interview itself. See Kelley v. State, 569 So.2d 754, 762 (Fla.1990) (explaining that the Court had previously relinquished jurisdiction to permit the judge to interview the jurors); Sconyers, 513 So.2d at 1117 (remanding for the trial court to conduct juror interviews). We directed in Marshall II that "the trial court may wish to conduct most or all of the questioning of the jurors, thereby ensuring that unnecessarily intrusive questions will not be asked of the jurors and to prevent questioning on matters that inhere in the verdict." 854 So.2d at 1253. The trial court expressed a desire to adhere to this suggestion when it denied Marshall's request to informally interview Coy Thomason. For all these reasons, we conclude the trial court's decision to deny Marshall an informal interview of Thomason was not an abuse of discretion.
Marshall also contends that the trial court abused its discretion by limiting the scope of the questioning of Thomason. In an attempt to restrict the scope of the hearing on remand but allow for a more thorough examination of Coy Thomason based on the allegations in Debra Thomason's affidavit, the trial court conducted a multipart interview of Thomason. In light of the rather delicate nature of juror interviews in general (in order to avoid matters that inhere in the verdict) and in light of this Court's cautionary language about the narrow scope of the hearing on remand in this specific case, we conclude the trial court's decision was not an abuse of discretion. In addition to asking the questions posed to the other jurors, the trial court asked Thomason two questions apparently proposed by the State. The court first asked, "While you were a juror trying the Matthew Marshall case, did you ever discuss the case with your ex-wife Debra Thomason or any people at your place of work?" Next, the court asked, "Did you ever read any newspaper articles regarding the Matthew Marshall case while you were a juror on the case?" Thomason replied in the negative to both questions. Both questions focused on the specific allegations in Debra Thomason's affidavit.
Marshall's counsel proposed five additional questions for the court to ask Coy Thomason. The State did not object to the first question, so the court asked Thomason, "First . . . did you at anytime carry a briefcase with you containing articles of the Matthew Marshall case?" Thomason replied that he did not. Like the earlier question asked by the court to Thomason, this question focused on a specific allegation in Debra Thomason's affidavit. The court also asked Thomason a question which was a rephrased version of a question originally proposed by Marshall: "Did anyone tell you or have you read any newspaper articles or heard anything on radio or television about why you were being called here today?" Thomason responded in the negative. Although this *1081 question did not focus on the allegations in the Debra Thomason's affidavit, it did concern Thomason's awareness of the ongoing inquiry into the allegations of juror misconduct.
The court also sustained objections to other questions proposed by Marshall. While the questions may not have improperly inquired into matters which inhere in the verdict, they related to matters not specifically alleged in Debra Thomason's affidavit. Therefore, the trial court did not abuse its discretion in ruling that the questions raised issues that were not presented.
In sum, we find that the trial court did not abuse its discretion by not allowing counsel to informally interview former juror Coy Thomason or by limiting the manner and scope of the questioning of Thomason.

CONCLUSION
Based on the foregoing reasons, we affirm the trial court's denial of postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] She purportedly called Smith in reference to one of his clients, to whom she was related. Id. at 1239 n. 4. On remand, the record contains no additional evidence as to Smith's ability to identify the caller.
[2] As recognized by this Court in Marshall II, a verdict cannot be impeached by conduct which inheres in the verdict. 854 So.2d at 1240; see, e.g., McAllister Hotel, Inc. v. Porte, 123 So.2d 339, 344 (Fla. 1959); Russ v. State, 95 So.2d 594, 600 (Fla. 1957). Moreover, a juror is not competent to testify about matters which inhere in the verdict. § 90.607(2)(b), Fla. Stat. (1999). Judicial inquiry into jurors' emotions, mental processes, or mistaken beliefs is forbidden. State v. Hamilton, 574 So.2d 124, 128 (Fla.1991).
[3] See R. Regulating Fla. Bar 4-3.5(d)(4).
[4] See Fla. R. Civ. P. 1.431(h).
[5] Florida Rule of Criminal Procedure 3.575, which now governs motions to interview jurors in criminal cases, was not in existence when the motion to interview juror Coy Thomason was filed. We adopted that rule in 2004. Amendments to the Fla. Rules of Criminal Procedure, 886 So.2d 197, 197 (Fla.2004). It became effective on January 1, 2005. Id. at 200.