**Bobby Earl LUSK, Petitioner–Appellee, Cross–Appellant,**

v.

**Richard L. DUGGER, Secretary, Florida Department of Corrections, Respondent–Appellant, Cross–Appellee.**

**No. 88–4042.**

United States Court of Appeals, Eleventh Circuit.

Nov. 22, 1989.

Rehearing and Rehearing In Banc Denied Jan. 8, 1990.

Richard Levitt, New York City, for petitioner-appellee, cross-appellant.

Mark C. Menser, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellant, cross-appellee.

Before EDMONDSON and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

COX, Circuit Judge:

Bobby Earl Lusk was convicted in Florida of first-degree murder and sentenced to death. He filed a 28 U.S.C. § 2254 petition seeking habeas corpus relief. The district court denied relief as to the conviction, but granted relief as to the sentence. Lusk appeals the denial of relief as to the conviction, and the state cross-appeals the grant of relief as to the sentence. We affirm the denial of relief as to the conviction, reverse

the grant of relief as to the sentence, and remand to enable the district court to consider the claims it has not yet addressed.

## I. *Procedural Background*

Florida State Prison inmate Bobby Earl Lusk fatally stabbed fellow inmate Michael Hall. The Supreme Court of Florida has accurately summarized the facts as follows:

> At the Thanksgiving Day noon meal in the Florida State Prison cafeteria on November 23, 1978, Bobby Earl Lusk fatally stabbed inmate Michael Hall. Lusk was serving three consecutive life terms for two convictions of armed robbery with a pistol and a simultaneous conviction of first-degree murder. The victim, Hall, was serving a 30–year sentence for the second-degree stabbing murder of an inmate at Sumter Correctional Institution. Lusk initially made a statement to prison officials that Hall and two other inmates had robbed him in his cell on the morning of the murder, stabbed his mattress several times and threatened him if he reported the incident. He then said he would not take it anymore and resolved to kill one of the men. According to Lusk, he took his homemade knife to the dining hall at lunchtime and stabbed Hall in the back two or three times. (The body had three stab wounds in the back.) He concluded the statement by saying that Hall had been sitting when he stabbed him and Hall had thrown a tray at him after the stabbing. Lusk moved to suppress the confession as being involuntary but this was denied.... At trial, Lusk testified and offered self-defense as an explanation for the crime, stating that Hall threatened to "take him out" and that Hall attacked him first with a knife of his own.

*Lusk v. State*, 446 So.2d 1038, 1040 (Fla. 1984) ("*Lusk I*").

Lusk was indicted for first-degree murder. Attorney Mack Futch was appointed to represent him, and the case went to trial in December, 1979.

Lusk testified at the trial and offered self-defense as his explanation for the slay-

ing. The jury found Lusk guilty of first-degree murder as charged. Two days later the trial court reconvened the jury for an advisory sentencing hearing (the "penalty phase"). Lusk also testified at this hearing, and other witnesses were called on his behalf. The state's evidence at this hearing consisted of Lusk's prior first-degree murder conviction and two robbery convictions; a narrative description of these crimes was read to the jury.

In closing arguments to the jury at the penalty phase, the state argued the presence of four statutory aggravating factors:

(a) The capital felony was committed by a person under sentence of imprisonment.

(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.

(c) The defendant knowingly created a great risk of death to many persons.

. . . . .

(h) The capital felony was especially heinous, atrocious, or cruel.

Fla.Stat.Ann. § 921.141(5) (1985). In his closing argument, attorney Futch did not review the evidence presented at the penalty phase, but instead pleaded for mercy. The jury returned a recommendation of life imprisonment.

The second phase of the sentencing proceeding (the "sentencing phase") was held before Judge Fagan, the trial judge, in February, 1980. Judge Fagan acknowledged that the jury had responded to counsel's eloquent and persuasive argument for mercy. He stated that "[n]o argument was made, nor could any have been justifiably made, in favor of mitigating circumstances outweighing aggravating circumstances." Appendix to Petition for a Writ of Habeas Corpus (hereafter "Appendix") Vol. 1, p. 588. Judge Fagan found no mitigating factors to balance against the four aggravating factors presented by the state. He noted that "[t]here were no mitigating circumstances, either as statutorily prescribed or as should otherwise be considered against the aggravating circumstances pre-

scribed by the statute." *Id.* at 588–89. He thus accepted all of the aggravating factors, overrode the jury's recommendation, and sentenced Lusk to death.

Lusk appealed to the Florida Supreme Court, which unanimously affirmed his conviction and affirmed the death sentence with two justices dissenting. *Lusk v. State,* 446 So.2d 1038 (1984) (*"Lusk I"*), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). The state supreme court struck one aggravating factor—that Lusk knowingly created a great risk of death to many persons—as not supported by the record. The court concluded, however, that the remaining three aggravating factors would sustain the trial court's override of the jury's recommendation. The Florida Supreme Court applied its *Tedder*[1] rule and found no reason to reverse the judge's sentence:

> After having reviewed the record and in light of the totality of the circumstances, we hold that the jury override in this case is proper since the facts suggesting the death sentence are so clear and convincing that no reasonable person could differ.... Additionally, we conclude that the jury's recommendation of life was not based on any valid mitigating factor discernible from the record and therefore it was proper for the trial judge to decline to follow their recommendation.

446 So.2d at 1043.

Lusk then petitioned for collateral relief pursuant to Fla.R.Crim.P. 3.850. His claims included a claim that he received ineffective assistance of counsel at the guilt, penalty and sentencing phases of his trial. An evidentiary hearing was held in the state court before Judge Fagan at which Lusk offered evidence of his victim's reputation for violence, contending that he was prejudiced by the failure of his counsel to introduce this evidence at the guilt and penalty phases of trial. Lusk also presented evidence of his own troubled background, alleging prejudice in his counsel's failure to introduce such evidence at the penalty and sentencing phases. Lusk's petition for relief was denied.

The Florida Supreme Court affirmed denial of the 3.850 petition. *Lusk v. State,* 498 So.2d 902 (1986) (*"Lusk II"*), *cert. denied,* 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 517 (1987). That court first addressed Lusk's contention that counsel rendered ineffective assistance at the guilt phase and concluded that Lusk had not shown counsel's performance to be deficient. The court also rejected Lusk's argument that counsel was ineffective at the penalty phase for failing to introduce more evidence in mitigation.

Lusk thereafter petitioned the Florida Supreme Court for a writ of habeas corpus, alleging ineffective assistance of counsel on direct appeal. That petition was summarily denied. *Lusk v. Dugger,* 518 So.2d 1276 (Fla.1987).

In January 1988, Lusk filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition asserts a claim of ineffective assistance of counsel at all stages of trial and on direct appeal, which challenges both his conviction and his sentence. He asserts other claims which challenge only his sentence. The district court denied relief as to the conviction, but granted relief as to the sentence. The court vacated the sentence of death and allowed the state 120 days within which to resentence Lusk to a sentence other than death. Lusk appealed this denial of relief as to his conviction; the state cross-appealed the order vacating the death sentence.[2]

---

**1.** *Tedder v. State,* 322 So.2d 908 (Fla.1975), established Florida's standard of reviewing a judge's decision to override an advisory jury's recommendation of life. Therein the court stated:

> A jury recommendation under our trifurcated death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.

> *Id.* at 910.

**2.** Lusk does not argue in his appellate brief that he received ineffective assistance of counsel on direct appeal and therefore that claim is considered abandoned. *Ballard v. Johnson,* 821 F.2d 568 n. 1 (11th Cir.1987).

## II. *The Ineffective Assistance of Counsel Claims*

Initially, we address our standard of review of the district court's conclusion that Lusk was not denied effective assistance of counsel at the guilt, penalty and sentencing phases of his trial. The claim of ineffective assistance of counsel presents a mixed question of law and fact and, as such, is subject to our plenary review. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Davis v. Kemp*, 829 F.2d 1522 (11th Cir.1987), *reh'g en banc denied*, 835 F.2d 291, *cert. denied*, 485 U.S. 929, 108 S.Ct. 1099, 99 L.Ed.2d 262 (1988). The findings of historical fact made by the state courts on this issue are entitled to a presumption of correctness. 28 U.S.C. § 2254(d). The *conclusions* regarding effective assistance of counsel, however, whether made by the Florida state courts or the district court and whether stated as a "finding" or not, are matters of law and thus are not presumed correct. We therefore independently consider whether Lusk was deprived of his right to effective assistance of counsel.

The familiar standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs claims that a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment. First, the court must determine whether the acts or omissions of counsel identified by the defendant were "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. Second, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Each of the two prongs of the test—performance and prejudice—are mixed questions of law and fact. In deciding the ultimate question of whether the petitioner was denied effective assistance at some phase of his trial, each component must be satisfied. Thus, regardless of which prong is addressed first, it is a threshold to the next. *Id.* at 697, 104 S.Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order [as the *Strickland* Court] or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). We conclude that Lusk fails to demonstrate that he was prejudiced by his counsel's performance at any stage of trial and sentencing. We thus need not reach the performance prong of *Strickland* in our analysis.

### A. *The Guilt Phase*

Lusk asserts prejudicial error on the part of his counsel for failure to introduce "critical evidence" to support his defense of self-defense. This consists of evidence of his victim's character and reputation as well as the facts underlying Hall's prison murder conviction and disciplinary record. Lusk presents these factors as justification for the stabbing, stating that there is "of course, little more powerful evidence to support a claim of self-defense." Brief for Appellant, 45–47.

■ The jury was well aware that this case arose from a prisoner-on-prisoner homicide in a Florida state penitentiary. In view of the evidence regarding Hall's alleged robbery of Lusk the morning of the murder, his threats against Lusk, as well as his nickname of "Yard Dog," explained at trial as meaning that Hall was a "big wheel" in the prison, Hall's violent nature could not have been lost on the jury. We agree with the Florida Supreme Court's finding that "the jury was made aware of Hall's reputation for violence." *Lusk I,* 498 So.2d at 905. The trial judge accurately charged the jury on self-defense under Florida law. A critical element of that defense is that to justify the use of deadly force, the force opposed must be imminent. Although incarceration in a state penitentiary might be a circumstance to be considered by a factfinder in assessing a claim of self-defense, the rule does not operate differently because the participants are behind bars. One prisoner may not kill another inmate in a preemptive strike and then excuse the act as done in self-defense. The record amply supports the jury's rejection of self-defense. Considering that

Lusk's attack on Hall took place four hours after the alleged provocation and that Lusk stabbed Hall in the back as his victim ate lunch, we find the element of imminence lacking, even in the context of a state prison. Consequently, we conclude that Lusk has not carried his burden of proving to a reasonable probability that he was prejudiced by counsel's failure to put on evidence of Hall's reputation and prior murder conviction at the guilt phase.

## B. The Penalty and Sentencing Phases

Lusk also contends that his attorney's failure to present various nonstatutory mitigating evidence at the penalty and sentencing phases of the trial constitutes ineffective assistance.[3] He argues that this mitigating evidence would have supplied a reasonable basis for the jury's recommendation of life and would have precluded an override by the trial judge under the *Tedder* standard. Judge Fagan, who had been the trial judge, considered the evidence at the 3.850 hearing and concluded that Lusk was not prejudiced by his attorney's failure to present these matters at the penalty and sentencing hearings, as the evidence added nothing new and was merely cumulative of that which was considered previously. The Florida Supreme Court agreed that the evidence was cumulative, and added that it "would not have affected the ultimate sentence imposed in view of the aggravating factors affirmed by this court [on direct appeal]." *Lusk II*, 498 So.2d at 906.

The district court found that counsel's failure to obtain and offer evidence at the penalty and sentencing phases which established these nonstatutory mitigating circumstances constituted deficient performance on his part, but concluded that petitioner had not established that he was prejudiced. We agree that Lusk has not demonstrated prejudice and therefore need not address the performance prong of the *Strickland* analysis.

As noted, Lusk asserts that his lawyer should have presented evidence of nonstatutory mitigating circumstances so as to foreclose an override.[4] This evidence was presented at the 3.850 hearing and consists of evidence relative to (1) Lusk's childhood

---

3. We refer to the hearing before the advisory jury as the "penalty phase" and to the subsequent hearing before the judge as the "sentencing phase."

4. This contention is inextricably linked to Lusk's interpretation of *Tedder* and its progeny. Lusk contends that if there is *any* basis to support a jury recommendation of life, then the trial judge must abandon his duty to balance aggravating factors against mitigating factors in determining sentence and accept that recommendation.

It is now clear that the Florida courts do not so interpret *Tedder*. The Florida Supreme Court recently held in *Pentecost v. State*, 545 So.2d 861 (1989) that such an understanding of the jury override rule was incorrect:

In *Ferry v. State* [507 So.2d 1373 (Fla.1987)], we stated: "When there are valid mitigating factors discernible from the record upon which the jury could have based its recommendation an override may not be warranted." We recede from any implication in *Fead v. State* [512 So.2d 176 (Fla.1987)], that an override is never warranted when valid mitigating factors exist.

*Id.* at 863, n. 3 (citations omitted).

In *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989), this court reversed the district court's grant of relief as to defendant's death sentence, which had been imposed contrary to the trial jury's recommendation of life imprisonment. At his penalty hearing, the defendant offered both statutory and nonstatutory mitigating evidence, including the testimony of six witnesses who testified to redeeming qualities in his character. The sentencing judge rejected the mitigating evidence, found six statutory aggravating circumstances and sentenced the defendant to death. The defendant's conviction and death sentence and subsequent denial of relief in state collateral proceedings were affirmed by the state supreme court. In federal habeas review, however, the district court vacated the death sentence because it concluded that the Florida courts had abdicated their review under the *Tedder* standard. This court disagreed and reversed, noting:

Our court, however, has rejected the theory that a trial judge's failure to make specific written findings concerning nonstatutory mitigating circumstances raises the inference that he did not *consider* such evidence in reaching the decision to impose the death penalty.... [N]o inference can be drawn from the trial judge's silence that he did not *find* nonstatutory mitigating circumstances to be present. Under the facts of this case the only reasonable conclusion is that the trial judge found at least some mitigating factors to be present, but also found that they were *outweighed* by the aggravating factors also present.

*Id.* at 1475 (citation omitted).

and family background; (2) Hall's prison record, to show the basis for Lusk's fear of Hall; and (3) Lusk's favorable adjustment to prison life.

The evidence relative to Lusk's childhood and family background consists of records from Lusk's stay at the Kentucky Children's Home in 1962 and Western State Hospital in 1968 for psychiatric evaluation as a child and adolescent. (Appendix Vol. 3, p. 1136–1192; 1252–1261). Lusk contends that this evidence chronicles a childhood of "neglect and abuse, periods of running away from home starting as early as age ten, and troubled relationships with his two fathers, his natural father and his stepfather, who used him as a pawn in their feud over his mother." (Initial Brief of Appellant, page 41).

At the sentencing hearing, Lusk testified that he had been committed to these institutions for observation, but had never been adjudicated incompetent. (Appendix Vol. 1, p. 537–39). The records from Kentucky welfare authorities reveal conflict and friction which existed between Lusk's mother and stepfather (the Lusks) on the one hand and his natural father and wife (the Walkers) on the other. *See e.g.*, Appendix Vol. 3, p. 1149, 1167. In January 1962, Bobby Lusk was declared a needy, neglected and dependant child. *Id.* at 1138. In March 1962, he was committed to the Department of Child Welfare as a delinquent child who was truant, destructive at school and defiant of all authority. *Id.* Evaluations described him as emotionally disturbed and needing psychiatric evaluation and treatment. *Id.* at 1141. Later evaluations, after his placement in the Kentucky Children's Home and before his release to the Lusk family (which had then moved across town from the Walkers), described Lusk as considerably improved and making noticeable progress. *Id.* at 1154, 1157, 1163. The 1968 records from Western State Hospital recount Lusk's problems with glue sniffing, *id.* at 1254, and also mention that he had broken into a pawn shop and on a few occasions had pointed guns at his parents or other people. *Id.* at 1258, 1259.

We agree with the Florida Supreme Court that even if this evidence had been introduced to bolster Lusk's testimony as to his background, the death sentence would not be affected due to the presence of significant aggravating factors. Although one can speculate in hindsight that it may have been desirable to present this evidence to the jury, it is also possible that the remoteness in time of these episodes to Lusk's murder of Hall in 1978 would have been as irrelevant to the advisory jury as it was to the sentencing judge. Further, such evidence might, in fact, be aggravating rather than mitigating. Lusk's own expert witness at the 3.850 evidentiary hearing conceded on cross-examination that the advisory jury could have found this evidence aggravating. Appendix Vol. 2, p. 1065–68. In any event, in view of the totality of the evidence, we conclude that Lusk has not shown a reasonable probability that the result would be different if this evidence relative to his childhood had been introduced.

Lusk argues that previous decisions by this court in which the attorneys' failures to investigate and introduce background evidence in the penalty phase of capital trials were held to be prejudicial mandate the same holding in his case, citing *Harris v. Dugger*, 874 F.2d 756 (11th Cir.1989); *Middleton v. Dugger*, 849 F.2d 491 (11th Cir.1988); *Porter v. Wainwright*, 805 F.2d 930 (11th Cir.1986); *Thomas v. Kemp*, 796 F.2d 1322 (11th Cir.1986); and *Douglas v. Wainwright*, 714 F.2d 1532 (11th Cir.1983), *vacated and remanded*, 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874, *vacated and remanded on other grounds*, 468 U.S. 1212, 104 S.Ct. 3580, 82 L.Ed.2d 879 (1984), *panel opinion reinstated*, 739 F.2d 531, *cert. denied*, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). We find those cases factually distinguishable and not controlling here.

■ Turning to the evidence of Hall's prison record, we note that the penalty hearing was conducted before the same petit jury that determined guilt. At the outset of the penalty hearing, the trial judge instructed the jury to consider the

penalty phase evidence together with the guilt phase evidence in reaching a recommendation. Thus, the jury was apprised of Hall's violent nature and of the fact, through Lusk's own testimony at the penalty phase, that Hall had murdered another inmate. In sentencing Lusk, the trial judge stated that he had not limited consideration of mitigating factors to those listed in the statute, but that in view of several undisputed aggravating factors, there were "insufficient mitigating circumstances to outweigh the aggravating circumstances." Appendix Vol. 1, p. 594. Because the sentencing judge was aware of the fact that Hall had previously committed a murder while in prison, we conclude that Lusk was not prejudiced by the failure to have Hall's prison records introduced.

█ The evidence relative to Lusk's favorable adjustment to prison life does not qualify as a statutory mitigating circumstance, is not capable of justifying his crime, and would not offset the clearly established statutory aggravating circumstances which led Judge Fagan to override the jury recommendation. Although such evidence would not have been irrelevant, see *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), on the facts of this case—with particular focus on the fact that he committed this crime while in prison—Lusk fails to show prejudice.

Lusk's claims of ineffective assistance of counsel include a claim that his counsel failed to review the presentence report with him prior to the sentencing hearing, and that this error on the part of his counsel was prejudicial because there were factual inaccuracies in the presentence report which impacted the sentence imposed. The district court did not discuss this contention in its opinion. Since the *Strickland* analysis requires an evaluation of counsel's *overall* performance at sentencing, however, and a determination of whether Lusk was prejudiced thereby, we deem it appropriate to address this claim at this time. There is no apparent reason not to address it. A full evidentiary hearing was held in the state post-conviction proceedings, and no evidentiary hearing was either sought or held in the district court.

█ Lusk alleges that the presentence report is inaccurate in three respects. We will consider each alleged inaccuracy in turn.

Lusk contends that his stay at the Kentucky Children's Home in 1962 resulted from an adjudication that he was a neglected child, and that it was not due to a "prior arrest and conviction." The relevant portion of the presentence report reads as follows:

II. PRIOR ARRESTS & CONVICTIONS

*Juvenile Record:* (Taken from Classification Summary) "The subject denied having a juvenile record, however, other information indicates he was at the Kentucky Children's Home as well as the State Reformatory in Kentucky on several occasions. Those include 3 times for truancy once for B & E and one time for attempted murder. He was declared incorrigible at the age of [illegible] and sentenced to the State Prison." Appendix Vol. 1, p. 576–a.

This report suggests—without explicitly saying so—that Lusk was at the Kentucky Children's Home or the state reformatory because of some criminal conduct. The records tendered by Lusk in support of his claim establish that he was initially afforded custodial housing because he had been declared "needy, neglected and dependent." The same record establishes, however, that he was indeed committed to the Department of Child Welfare by the Fulton County Juvenile Court on March 5, 1962, following a hearing on March 2, 1962. (Lusk was 11 years old at the time). The reception center staffing report lists the reason for commitment as follows: *"Present Offense: Truancy, destructive at school, rejects all authority."* Appendix Vol. 3, p. 1138. The classification summary record which might explain the notations for attempted murder and B & E is not in the record.

Next, Lusk contends that he was an illegitimate child of an affair between his mother and a neighbor—not born of the union between his mother and her husband

as stated in the report. Lusk does not explain how this may have influenced the judge's decision relative to an appropriate sentence.

Finally, Lusk contends that the presentence report failed to refer to his "excellent adjustment and institutional record at F.S.P. prior to being preyed upon by Hall." What the report said about his institutional adjustment was that "he has not built a bad disciplinary record while a prisoner in the State of Florida...." Appendix Vol. 1, p. 579. We conclude that these alleged inaccuracies are relatively insignificant, and fall far short of demonstrating a reasonable probability that a different sentence would have been imposed had they been brought to the attention of the sentencing judge.

The prejudice prong of the *Strickland* test, therefore, is not satisfied with respect to either the penalty or sentencing phases of Lusk's trial.

### III. *The Jury Override Issues*

The ground upon which the district court granted Lusk relief was its conclusion that the Florida trial and appellate courts had misapplied the jury override standard in light of the constitutional obligation of the sentencer to listen to mitigating evidence. The court reasoned that the failure to consider nonstatutory mitigating evidence existent in the record—evidence which it found adequate to support the jury's recommendation—produced an arbitrary and irrational result in violation of the Eighth Amendment, thus mandating that the court vacate the death sentence.

The district court's premise in arriving at this conclusion is that the Florida courts' application of their jury override standard was tainted by some *Lockett*[5]–*Eddings*[6]–*Hitchcock*[7] error. We conclude that the *Tedder* standard was not applied in an unconstitutional manner and that the result of that application—an override of

the jury's recommendation—is neither arbitrary nor irrational in this case.

As previously noted, the Florida jury override standard enunciated in *Tedder v. State*, 322 So.2d 908, 910 (Fla.1975) states that "to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." The Florida Supreme Court later emphasized the deference to be accorded a jury's life recommendation, noting that it "should not be overruled unless no reasonable basis exists for the opinion." *Richardson v. State*, 437 So.2d 1091, 1095 (Fla.1983).

The constitutional errors involved in the *Lockett–Eddings–Hitchcock* cases are not present in the case at bar. In *Lockett v. Ohio* the Supreme Court struck down a death penalty statute that prevented the sentencer from considering mitigating evidence relating to the defendant's character, record, and circumstances of the offense, in violation of constitutional standards that required individualized consideration of mitigating factors. In *Eddings v. Oklahoma*, the Supreme Court vacated the petitioner's death sentence because the sentencing judge had refused, as a matter of law, to consider the defendant's proffered mitigating evidence of his upbringing and mental disturbances. Finally, in *Hitchcock v. Dugger*, the Supreme Court reversed and remanded a death sentence rendered by a Florida judge who had followed the jury's recommendation of death. The *Hitchcock* trial court had instructed the jury not to consider and itself refused to consider mitigating evidence not made a mitigating factor by the statute.

The district court did not find that any *Lockett–Eddings–Hitchcock* error occurred, but stated: "It would be an exercise in futility to require that nonstatutory mitigating circumstances may be presented, as *Lockett* establishes, to impose an obligation on the sentencing authority to

5. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

6. *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

7. *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

listen to that evidence, as *Eddings* demands, and to extend that obligation to the advisory jury, as *Hitchcock* holds, unless nonstatutory mitigating evidence can form a basis for a jury life recommendation." Slip op. at 27.[8] The district court then discussed its review of the record, finding it replete with facts to support the jury's recommendation. *Id.* at 30–34. The district court referenced the trial court's statement regarding mitigating factors in this case to imply that the Florida courts had refused to consider all the mitigating evidence Lusk offered, thus violating *Lockett–Eddings–Hitchcock* in applying the *Tedder* standard.

Our independent review of the record reveals that no *Lockett–Eddings–Hitchcock* error was committed. Taken in context, the trial court's findings at sentencing dispel the notion that it refused to consider the nonstatutory mitigating evidence which was presented:

> There are no mitigating circumstances either under those prescribed by statute or otherwise. At the penalty phase of the trial the Defendant presented evidence, which was allowed by the court, to show that the victim was serving a 30–year sentence for second-degree murder in the stabbing of a prison inmate at another institution.
>
> Although not argued, the inference suggested to be drawn from such evidence may have been that the life taken was one not meriting consideration of the death penalty by the Defendant. This court cannot and does not entertain such a concept, but genuinely believes that the life of the victim, the life of this Defendant, and the lives of all prison inmates are to be protected by the same consideration given to all mankind.
>
> The murder of a prisoner, and even one who also is guilty of a prior murder, is as reprehensible in our society as any other and deserves the same punishment.

> There are no mitigating circumstances and the aggravating circumstances are clear, abundant, and convincing, which compel a finding and determination by this court that there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
>
> This court has not limited its consideration of mitigating circumstances to only those prescribed by statute, but has limited its consideration of aggravating circumstances to those specified in Section 921.141, Florida Statutes.
>
> Even if it were determined, that the findings of this court, of aggravating circumstances under section 921.141(5)(c) and (h) of Florida Statutes, are not in conformity with the findings of those whose ultimate responsibility it is to review and determine such matters, the undisputed and multiple findings under section 921.141(5)(a) and (b) of Florida Statutes alone, far outweigh any mitigating circumstances.

Sentencing Tr. at 14–15 (Appendix Vol. 1, p. 593–94).

▮ The district court, we find, improperly engaged in reweighing the evidence after the Florida courts determined that the override was constitutional and proper because there was no reasonable basis to support the recommendation. The district court's opinion reveals as much: the court found that Lusk's fear of his victim was established in the record "to the degree necessary for it to constitute a reasonable basis for the jury's recommendation," slip op. at 31–32, and that "[t]he matter is one of degree; it is entirely reasonable for a jury to conclude ... that petitioner was culpable of first-degree murder yet his culpability did not rise to a level that merited the moral judgment of death." *Id.* at 33.

The Florida courts did not consider the mitigating evidence Lusk presented to provide a reasonable basis for sustaining the

---

8. We do not disagree with this statement by the district court, but we abjure any implication therein that the existence of any mitigating evidence in the record, whether statutory or not, means that a trial judge cannot constitutionally override a jury recommendation of life. *See Parker v. Dugger,* 876 F.2d 1470 (11th Cir.1989)

(reversing district court's grant of habeas relief as to death sentence imposed when trial judge overrode jury recommendation of life; record contained evidence that under some circumstances could support a life recommendation, but which did not outweigh clearly established statutory aggravating evidence).

jury's recommendation of life imprisonment when balanced against the several aggravating factors. The supreme court determined that the jury was made aware of the victim's reputation for violence, *Lusk II*, 498 So.2d at 905, and that the jury's recommendation "was not based on any valid mitigating factor discernible from the record." *Lusk I*, 446 So.2d at 1043. That court further determined from a review of the record that the trial judge "did not ignore evidence presented by Lusk in mitigation," but found it "clear that the trial judge did not believe that said evidence in its totality rose to the level of mitigation in Lusk's case." *Id.* The state supreme court thus held that the dictates of *Tedder* had been satisfied.

The state trial court acknowledged that it considered the mitigating evidence offered by Lusk in his trial, as did the Supreme Court of Florida. This court may examine the application of Florida's jury override scheme, *Parker v. Dugger*, 876 F.2d 1470, 1474 (11th Cir.1989), but we may not second-guess the state courts regarding whether the trial court "complied with the mandates of *Tedder.*" *Id.* at 1475. It is not our function to decide whether we agree with the advisory jury or with the trial judge and the Supreme Court of Florida. Our review, rather, is limited to ascertaining whether the *result* of the override scheme is arbitrary or discriminatory. *Spaziano v. Florida*, 468 U.S. 447, 465, 104 S.Ct. 3154, 3165, 82 L.Ed.2d 340 (1984). Lusk contends that we should grant only limited deference to state override proceedings. On the contrary, to the extent that those proceedings do not produce an arbitrary or discriminatory result, the Constitution is not violated, and we will not second-guess the state courts on a matter of state law. The state courts concluded that there were no *reasonable* bases for the jury's recommendation despite the fact that both the jury as advisor and the judge as sentencer were made aware of mitigating factors. On the facts of this case, we do not find that the result of the application of *Tedder* was arbitrary or irrational.

## IV.  *Conclusion*

Because it granted relief as to the sentence on the basis of the jury override, the district court did not address other claims asserted by Lusk which challenge his sentence.[9] While we could address those claims, *see Lindsey v. Smith*, 820 F.2d 1137 (11th Cir.1987), we conclude that a proper exercise of our discretion in this case, given the nature of the claims and the issues presented, is to remand them to the district court so that the district court may address them in the first instance. The judgment of the district court is REVERSED to the extent that it grants relief on the jury override issue and AFFIRMED on all other issues. The case is REMANDED to the district court for consideration of the claims that court has not yet addressed.

---

**9.** These claims are: (1) that Lusk's death sentence violated the Eighth Amendment because it was based on the unconstitutionally vague statutory aggravating circumstance that the murder was "especially heinous, atrocious or cruel;" (2) that the Florida death penalty statute improperly shifted the burden of proof to the defendant to show that mitigating circumstances outweighed aggravating circumstances; (3) that Lusk was denied due process because counsel failed to review the presentence report with him prior to sentencing and because the trial court failed to ascertain whether Lusk had reviewed the report; and (4) that Lusk's Eighth Amendment rights were violated because the state trial judge believed that he was barred from considering notions of mercy in his sentencing decision.