[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15419
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-14065-CV-CMA

MATTHEW MARSHALL,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
Walter A. McNeil,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 28, 2010)**

Before DUBINA, Chief Judge, HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

Death-sentenced Florida prisoner Matthew Marshall appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. After review and oral argument, we affirm.

## I. BACKGROUND

### A.    Crime, Conviction, and Sentence

On November 1, 1988, Marshall, then an inmate at Martin Correction Institute in Florida with nine prior violent felony convictions,[1] murdered fellow inmate Jeffrey Henry. As described by the Florida Supreme Court:

> [W]itnesses heard muffled screams and moans emanating from Henry's cell and observed Marshall exiting the cell with what appeared to be blood on his chest and arms. Within a few minutes, Marshall reentered the cell, and similar noises were heard. After the cell became quiet, Marshall again emerged with blood on his person. Henry was found dead, lying in his cell facedown with his hands bound behind his back and his sweat pants pulled down around his ankles to restrain his legs. Death was caused by blows to the back of his head.

Marshall v. State, 604 So. 2d 799, 802 (Fla. 1992) ("Marshall I"). Henry "received no less than twenty-five separate wounds," including six blows to the back of his head, and "was at least partially conscious during the second attack." Id. at 805-06. Witnesses heard Henry plead for mercy. Id. at 805.

---

[1]Marshall was convicted of kidnaping, sexual battery, and seven armed robberies. At the time of the murder, Marshall was 24 years old and serving a 46-year sentence.

Marshall was charged with first-degree murder. At trial, Marshall claimed he killed Henry in self-defense. The jury found Marshall guilty.

At the penalty phase, the State admitted copies of Marshall's prior violent felony convictions. Marshall expressly waived the right to present evidence of, or obtain a jury instruction on, statutory mitigating circumstances. Marshall relied solely on non-statutory mitigation.

Marshall intended to call his father, Perciful Marshall, to testify. However, Perciful Marshall did not show up for the penalty phase. Consequently, Marshall and the State entered into a stipulation, which was read to the jury, as to what Perciful Marshall's testimony would have been. The parties stipulated that Perciful Marshall would have testified:

> That he is Matthew Marshall's father. That Matthew was born on July 23rd, 1964. . . . That Matthew was his second born child. Matthew was born and raised in Miami, his father's present home. Matthew has one older brother and three younger brothers. Mr. Perciful Marshall worked hard all his life at one job at Modernage Furniture, and provided the best he could for his children and his wife. Matthew was the smartest of the children and made quote, "beautiful" unquote grades until he was in his early teens. Matthew was influenced by his older brother, Brendly . . . , who encouraged him to run the streets and break the law. Matthew's mother did not discipline the boys in Perciful's absence and led them to believe that there would . . . not be any consequences for their behavior. Matthew's mother allowed her lack of discipline to affect their marriage, as well as their children, to the extent that she and the boys were on one side and Perciful was on the other side. Mr. Perciful Marshall expressed that despite the bad things that Matthew has done and his problems earlier with him he

3

loves him very much. Mr. Perciful Marshall expressed that he would tell the jury of his love for Matthew and his request that they recommend to the Judge a life sentence rather than death. Mr. Perciful Marshall promised to be here but was unable to be here.

Other than this stipulation, Marshall presented no other evidence in the penalty phase.

In his closing argument, Marshall's counsel admitted that two statutory aggravating circumstances existed (the murder was committed while Marshall was under a sentence of imprisonment, and Marshall previously was convicted of violent felonies). But Marshall's counsel argued that the three other statutory aggravating circumstances that the State contended existed – the murder was committed during a burglary; was especially heinous, atrocious, or cruel; and was cold, calculated, and premeditated – were not present.

As non-statutory mitigation, Marshall's counsel argued that a death sentence was not appropriate, pointing out that: (1) Marshall and Henry had socialized with each other in the prison and there were no prior problems between them; (2) there was no evidence Marshall had any plan to kill Henry when he first entered Henry's cell; (3) Henry was a violent person and had offensive wounds on his hands, indicating the murder occurred during the course of a fight; (4) Marshall and Henry were of equal size and physical strength; (5) Marshall entered Henry's cell unarmed and bludgeoned Henry using a battery pack he found in Henry's cell; (6)

4

Marshall did not inflict further wounds after Henry was unconscious and did not steal Henry's gold chain, indicating the murder was not committed for financial gain and that Marshall had no intent to torture Henry; (7) Marshall's age at the time of the crime (24 years old) and his background (including the young age at which Marshall went to prison) were mitigating; and (8) Marshall was already serving a 46-year sentence, and an additional life sentence, even with the possibility of parole, would keep Marshall in prison for a long time.[2]

The jury recommended a sentence of life without parole.[3] The state trial court, however, overrode the jury's recommendation and sentenced Marshall to death. The state trial court found four statutory aggravating circumstances: (1) Marshall committed the murder while under a sentence of imprisonment; (2) Marshall was convicted of nine prior felonies involving the use or threat of violence; (3) Marshall committed the murder while he was engaged in or attempting to commit a burglary;[4] and (4) the murder was especially heinous,

_____

[2]In the course of his argument, Marshall's counsel stated that: (1) Henry was a drug dealer and on the morning of his murder was believed by one witness to be "committing a homosexual rape on a boy or . . . having homosexual sex with him"; and (2) Henry "was not in an innocent position," as are victims in other murder cases, such as children, the elderly, women, police officers, politicians, judges, or the victims of contract killings or killings for insurance proceeds.

[3]The state trial court polled the jurors as to whether the advisory sentence was the verdict of a majority of the jurors. Each juror agreed it was.

[4]For offenses committed on or before July 1, 2001, Florida law defines burglary as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an

atrocious, and cruel. In support of its finding that the murder was especially heinous, atrocious, and cruel, the state trial court found:

> The victim was attacked twice and remained at least partially conscious until the second attack. During the first attack he cried for mercy and was aware of the gravity of the situation. He was beaten and struck six times on the back of the head with two D-cell batteries and suffered for a period of several minutes until he finally lost consciousness and died. The attacks resulted in blood being sprayed and spattered about the room and the victim receiving some twenty-five separate wounds. The murder of this victim was extremely wicked and shockingly evil, with utter indifference to, or even enjoyment of the suffering of the victim. The murder was both conscienceless and pitiless.

While, as noted earlier, Marshall did not claim any statutory mitigating circumstances existed, the state trial court found two non-statutory mitigating circumstances: Marshall entered prison at a young age, and he behaved acceptably at trial. The state trial court expressly rejected as mitigating circumstances that Marshall's "older brother influenced him and led him astray to run the streets and break the law[,] [and Marshall's] mother failed to discipline him and caused him to believe there were no negative consequences for his bad behavior." In support of its decision to override the jury's recommendation and impose a death sentence, the state trial court stated, "Sufficient aggravating circumstances exist as enumerated in [Fla. Stat.] section 921.141(5), and there are insufficient mitigating

offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Fla. Stat. § 810.02(1)(a).

6

circumstances to outweigh the aggravating circumstances. The facts supporting this conclusion are so clear and convincing that no reasonable person could differ."

## B.     Direct Appeal

Marshall appealed. The Florida Supreme Court affirmed Marshall's first-degree murder conviction and death sentence. Marshall I, 604 So. 2d 799. As to the death sentence, the Florida Supreme Court concluded that the state trial court did not abuse its discretion in imposing a death sentence over the jury's recommendation of life imprisonment because there was "insufficient evidence to reasonably support the jury's recommendation of life":

> Marshall . . . alleges that the trial court abused its discretion in sentencing Marshall to death where the jury had made a recommendation of life imprisonment. It is well settled in Florida that a judge imposing sentence in a capital case must accord the jury recommendation great weight. E.g., Tedder v. State, 322 So. 2d 908, 910 (Fla. 1975). Where a jury has recommended a life sentence, the court must follow that recommendation unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Id. Where the record contains no evidence supporting a life recommendation, the trial court does not err in declining to follow that recommendation.
> In this case, the record contains insufficient evidence to reasonably support the jury's recommendation of life. Marshall's father was unable to attend the trial, but the defense and prosecution stipulated that he would have testified that Marshall did well in school until his early teens when his older brother influenced him to run the streets and break the law; that Marshall's mother did not discipline Marshall and allowed him to believe there would be no consequences for his behavior; and that Marshall's father loved him and requested a life sentence for his son. The trial court determined these facts were

7

not mitigating, but did find Marshall's behavior at trial as well as his entering prison at a young age to be mitigating. We find no error in the court's assessment of this mitigation and conclude that it does not provide a reasonable basis for the jury's recommendation of life in this case. Even viewing this mitigation in the light most favorable to Marshall, it pales in significance when weighed against the four statutory aggravating circumstances, including Marshall's record of violent felonies consisting of kidnapping, sexual battery, and seven armed robberies.

Furthermore, defense counsel's argument composed largely of a negative characterization of the victim does not provide a reasonable basis for the jury's life recommendation. Moreover, contrary to Marshall's assertion, the facts surrounding the murder do not suggest that the murder was committed in self defense or in a fit of rage. The witnesses heard muffled screams and moans emanating from the victim's cell and observed Marshall leaving the cell with what appeared to be blood on his chest and arms. Within a few minutes, Marshall reentered the cell and similar noises were again heard. The victim was found lying face down with his hands bound behind his back and his ankles were restrained. The victim received no less than twenty-five separate wounds and blood was sprayed and splattered about the cell. Death was caused by blows to the back of his head. Nothing in these facts supports the notion that Marshall acted in self defense or that he simply killed the victim in the heat of a fight. We thus conclude that the trial court did not abuse its discretion in finding the facts supporting the death sentence to be "so clear and convincing that no reasonable person could differ." See Tedder, 322 So. 2d at 910.

Id. at 805-06 (emphasis added). The United States Supreme Court denied

Marshall's petition for certiorari. Marshall v. Florida, 508 U.S. 915, 113 S. Ct.

2355 (1993).

C.    **State Collateral Proceedings**

Marshall filed two state collateral proceedings. First, Marshall filed a

Florida Rule of Criminal Procedure 3.850 motion to set aside his death sentence that raised 27 claims. The state 3.850 court (the same trial judge who imposed his sentence) granted an evidentiary hearing on four claims and later denied relief on all claims. The Florida Supreme Court affirmed on all but one claim, a jury misconduct claim which it remanded for an evidentiary hearing. Marshall v. State, 854 So. 2d 1235 (Fla. 2003) ("Marshall II"). After that evidentiary hearing, the state 3.850 court again denied the jury misconduct claim. The Florida Supreme Court affirmed. Marshall v. State, 976 So. 2d 1071 (Fla. 2007) ("Marshall IV"). The 3.850 proceedings did not involve Marshall's jury-override claim.

Rather, Marshall raised his jury-override claim in his petition for a writ of habeas corpus filed directly in the Florida Supreme Court.[5] Marshall's habeas petition claimed, inter alia, that his constitutional rights were violated because the state trial court arbitrarily applied Florida's legal standard for jury overrides set forth in Tedder v. State, 322 So. 2d 908 (Fla. 1975). The Florida Supreme Court denied Marshall's habeas petition, specifically rejecting Marshall's claim that the jury override was arbitrarily applied. Marshall v. Crosby, 911 So. 2d 1129, 1135-

---

[5]See Fla. R. Crim. P. 3.851(d)(3) (stating that, in capital cases, "[a]ll petitions for extraordinary relief in which the Supreme Court of Florida has original jurisdiction, including petitions for writs of habeas corpus, shall be filed simultaneously with the initial brief filed on behalf of the death-sentenced prisoner in the appeal of the circuit court's order on the initial motion for postconviction relief").

37 (Fla. 2005) ("Marshall III"). The Florida Supreme Court pointed out that it had already "reviewed the propriety of the trial court's override on direct appeal." Id. at 1136. It quoted at length from its analysis in its prior decision on direct appeal, which had explained why no facts supported the jury's recommendation of life, why all facts supported the death sentence, and thus why no reasonable persons could differ. Id. at 1136-37 (quoting Marshall I, 604 So. 2d at 805-06). The Florida Supreme Court again concluded that the jury-override standard in Tedder had not been arbitrarily applied by the state trial judge. Id. at 1137.

Before leaving Marshall's state habeas petition, we note another important part of the Florida Supreme Court's decision in Marshall's habeas case. The Florida Supreme Court also rejected Marshall's habeas claim that it had made a "major constitutional change" in the Tedder standard in its subsequent decision in Keen v. State, 775 So. 2d 263 (Fla. 2000). Marshall III, 911 So. 2d at 1136. The Florida Supreme Court expressly stated that "Keen is not new law" and "Tedder is the seminal case in Florida on jury overrides and remains so after Keen," stating:

> Marshall alleges that Tedder v. State, 322 So. 2d 908 (Fla. 1975), which allows the trial judge to override a jury recommendation in capital cases, was arbitrarily applied in this case based on language found in Keen v. State, 775 So. 2d 263 (Fla. 2000). In Tedder, this Court held that "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder, 322 So. 2d at 910. More recently, this Court in

10

Keen reiterated the proper analysis for a Tedder inquiry: "The singular focus of a Tedder inquiry is whether there is 'a reasonable basis in the record to support the jury's recommendation of life,' rather than the weighing process which a judge conducts after a death recommendation." Keen, 775 So. 2d at 283-84 (citation omitted). The Court further explained that "the jury's life recommendation changes the analytical dynamic and magnifies the ultimate effect of mitigation on the defendant's sentence." Id. at 285.

In Mills v. Moore, 786 So. 2d 532 (Fla. 2001), this Court rejected an argument similar to the one currently raised by Marshall. In so doing, this Court stated:

> While conceding that Keen is not new law, Mills nonetheless argues that Keen's application of Tedder constitutes a new standard by which jury override cases are reviewed. Keen is not a major constitutional change or jurisprudential upheaval of the law as it was espoused in Tedder. Keen offers no new or different standard for considering jury overrides on appeal. Thus, we disagree with Mills' contention that Keen offers a new standard of law and we reject the contention that Keen was anything more than an application of our long-standing Tedder analysis.
>
> Tedder is the seminal case in Florida on jury overrides and remains so after Keen. Tedder was applied to this case. Keen provides no basis for our reconsideration of this issue.

Id. at 539-40.

Marshall III, 911 So. 2d at 1135-36.[6]

---

[6]Marshall's state habeas petition also claimed that the state trial court's jury override violated the constitutional principles set forth by the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002). The Florida Supreme Court denied this claim as well, stating that (1) the Florida Supreme Court had rejected Ring claims in more than 50 death penalty cases tried before Ring, and its conclusions in those cases precluded Marshall from succeeding on his claim; (2) the United States Supreme Court upheld the jury-override feature of Florida's capital sentencing scheme in the pre-Apprendi, pre-Ring case of Spaziano v. Florida, 468 U.S. 447, 104 S. Ct. 3154 (1984), and had not overruled Spaziano; (3) Apprendi expressly exempted prior convictions

11

After the Florida Supreme Court denied Marshall's state habeas petition, the United States Supreme Court denied Marshall's certiorari petition. Marshall v. McDonough, 547 U.S. 1143, 126 S. Ct. 2059 (2006).

## D. Federal § 2254 Proceedings

In February 2009, Marshall filed the instant § 2254 petition. Marshall's § 2254 petition raised fifteen claims, including that the state trial court's jury override was contrary to the Tedder standard for overrides and thereby resulted in an arbitrary, capricious, and unreliable death sentence in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[7] The district court denied Marshall's petition.

As to Marshall's claim that the Tedder jury override and resulting death sentence were arbitrarily imposed, the district court concluded that (1) the Florida courts considered Marshall's mitigating evidence and found there was no reasonable basis for the jury's recommendation of life imprisonment, and (2) the district court had no authority to re-weigh the evidence or second-guess the state

---

from its proof requirements and Ring did not change that exemption, so Marshall's nine prior violent felony convictions would "take[] [Marshall's] sentence outside the scope of Ring's requirements"; and (4) in any event, even if Ring affected Florida law, the Florida Supreme Court already had held that Ring does not apply retroactively in postconviction cases. Marshall III, 911 So. 2d at 1133-35.

[7]Marshall's § 2254 petition also claimed, as had his state habeas petition, that the jury override violated Apprendi and Ring.

12

courts' decisions.

The district court granted a certificate of appealability on one issue: "whether Petitioner's [death] sentence violates the Eighth and Fourteenth Amendments based on a jury override which was arbitrary and capricious in light of Tedder."

## II. STANDARD OF REVIEW

We review the district court's legal conclusions de novo. Cummings v. Sec'y for the Dep't of Corr., 588 F.3d 1331, 1355 (11th Cir. 2009), petition for cert. filed, (U.S. Jun. 7, 2010) (No. 09-11289). Marshall's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which provides for deferential federal-court review of § 2254 claims already decided by state courts. Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009), cert. denied, 78 U.S.L.W. 3714 (U.S. Jun. 7, 2010 (No. 09-10597); see 28 U.S.C. § 2254(d). Section 2254(d), as amended by AEDPA, states that federal habeas relief shall not be granted as to any claims decided on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the

13

State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, – U.S. –, 130 S. Ct. 1171, 1173 (2010); see also Berghuis v. Smith, – U.S. –, 130 S. Ct. 1382, 1392-96 (2010) (reversing Court of Appeals' grant of habeas relief to state prisoner on Sixth Amendment jury-pool claim because the Supreme Court's precedent "hardly establishes – no less 'clearly' so – that [petitioner] was denied his Sixth Amendment right to an impartial jury drawn from a fair cross section of the community"). It must be United States Supreme Court precedent, not state-law precedent, that is contravened or unreasonably applied because "federal courts do not sit to revisit a state supreme court's judgment as to whether the trial court complied with state law." Bolender v. Singletary, 16 F.3d 1547, 1570 (11th Cir. 1994).

### III. DISCUSSION

Florida's statutory capital sentencing scheme was substantially the same at the time of Marshall's trial as it is today. See Fla. Stat. § 921.141 (1989); Fla. Stat. § 921.141 (2010). After a defendant is convicted of a capital felony, the state trial judge conducts a separate sentencing proceeding before the trial jury, at which the parties may present evidence "relevant to the nature of the crime and the character

14

of the defendant," including "matters relating to any of the aggravating or mitigating circumstances" enumerated by statute, and arguments for or against imposition of the death penalty. Fla. Stat. § 921.141(1) (1989). After hearing the evidence and arguments, the jury renders an advisory sentence to the state trial judge, based upon (1) whether there are sufficient statutory aggravating circumstances, (2) whether there are mitigating circumstances that outweigh the aggravating circumstances, and (3) consequently, whether the defendant should receive a sentence of life imprisonment or death. Id. § 921.141(2). However, "[n]otwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death." Id. § 921.141(3).[8]

Although the jury's advisory sentence "should be given great weight," the state trial judge in Florida is permitted to override it. Tedder, 322 So. 2d at 910. But, as the Florida Supreme Court held in Tedder, "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could

_____

[8]If the state trial court sentences the defendant to death, it must set forth in writing the findings upon which its sentence rests, specifically the statutory aggravating circumstances that it finds to exist and that there are insufficient mitigating circumstances to outweigh the statutory aggravating circumstances. Fla. Stat. § 921.141(3). The conviction and death sentence are subject to automatic review by the Florida Supreme Court. Id. § 921.141(4).

differ."  Id. (emphasis added).

The United States Supreme Court has upheld the constitutionality of Florida's statutory capital sentencing scheme, including its jury-override feature. See Spaziano v. Florida, 468 U.S. 447, 104 S. Ct. 3154 (1984); Proffitt v. Florida, 428 U.S. 242, 96 S. Ct. 2960 (1976).  In Spaziano, a jury-override case, the Supreme Court found "there is no constitutional imperative that a jury have the responsibility of deciding whether the death penalty should be imposed." Spaziano, 468 U.S. at 465, 104 S. Ct. at 3165.  The Supreme Court addressed Spaziano's claim that the state courts misapplied the Tedder standard for jury overrides in Florida.  The Supreme Court stated that although the Tedder standard represented a "significant safeguard" for Florida capital defendants, the Supreme Court's role was not to second-guess the application of the Tedder standard by the state courts, but rather simply to ensure that the result was not arbitrary or discriminatory:

> Petitioner's final challenge is to the application of the standard the Florida Supreme Court has announced for allowing a trial court to override a jury's recommendation of life.  This Court already has recognized the significant safeguard the Tedder standard affords a capital defendant in Florida.  We are satisfied that the Florida Supreme Court takes that standard seriously and has not hesitated to reverse a trial court if it derogates the jury's role.  Our responsibility, however, is not to second-guess the deference accorded the jury's recommendation in a particular case, but to ensure that the result of the process is not arbitrary or discriminatory.

16

Id. (citations omitted).  In <u>Spaziano</u>, the Supreme Court concluded that the jury override did not produce an arbitrary or discriminatory result.   <u>Id.</u> at 466, 104 S. Ct. at 3165.  In doing so, the Supreme Court reaffirmed that its federal role was not to decide whether it agreed with the state trial judge's or the Florida Supreme Court's override decision but to determine only whether the state courts' application of the jury-override procedure in a particular case was arbitrary or discriminatory, stating:

> We see nothing that suggests that the application of the jury-override procedure has resulted in arbitrary or discriminatory application of the death penalty, either in general or in this particular case.  Regardless of the jury's recommendation, the trial judge is required to conduct an independent review of the evidence and to make his own findings regarding aggravating and mitigating circumstances. . . . The Florida Supreme Court must review every capital sentence to ensure that the penalty has not been imposed arbitrarily or capriciously . . . [, and] there is no evidence that the Florida Supreme Court has failed in its responsibility to perform meaningful appellate review of each death sentence, either in cases in which both the jury and the trial court have concluded that death is the appropriate penalty or in cases when the jury has recommended life and the trial court has overridden the jury's recommendation and sentenced the defendant to death.
>
> In this case, the trial judge based his decision on the presence of two statutory aggravating circumstances. . . .  The trial judge found no mitigating circumstances.[9]
>
> The Florida Supreme Court reviewed petitioner's sentence and

---

[9]The two statutory aggravating circumstances found by the state trial court were that Spaziano had prior violent felony convictions (rape and aggravated battery) and the murder was especially heinous, atrocious, and cruel (Spaziano told a witness he tortured the victim before he killed her, and the victim's body had cuts on the breasts, stomach, and chest).  <u>Spaziano</u>, 468 U.S. at 466-67, 104 S. Ct. at 3165-66.

17

concluded that the death penalty was properly imposed under state law.[10] <u>It is not our function to decide whether we agree with the majority of the advisory jury or with the trial judge and the Florida Supreme Court. Whether or not "reasonable people" could differ over the result here, we see nothing irrational or arbitrary about the imposition of the death penalty in this case.</u>

<u>Id.</u> at 466-67, 104 S. Ct. at 3165-66 (citations omitted; emphasis added).

This Court also has considered jury-override challenges under Florida law. In <u>Lusk v. Dugger</u>, 890 F.2d 332 (11th Cir. 1989), the death-sentenced petitioner claimed the Florida trial court and the Florida Supreme Court misapplied the <u>Tedder</u> jury-override standard. <u>Id.</u> at 340. The district court granted relief, but this Court reversed, concluding the district court improperly re-weighed the penalty-phase evidence and the state court proceedings did not produce an arbitrary or discriminatory result:

> The district court, we find, improperly engaged in reweighing the evidence after the Florida courts determined that the override was constitutional and proper because there was no reasonable basis to support the recommendation. . . .
> . . . .
> The state trial court acknowledged that it considered the mitigating evidence offered by Lusk in his trial, as did the Supreme Court of Florida. This court may examine the application of Florida's jury override scheme, but we may not second-guess the state courts regarding whether the trial court "complied with the mandates of <u>Tedder</u>." It is not our function to decide whether we agree with the

---

[10]A majority of the Florida Supreme Court concluded that the state trial court's jury override satisfied the <u>Tedder</u> standard, but one justice dissented on this point. <u>See</u> <u>Spaziano v. State</u>, 433 So. 2d 508, 511 (Fla. 1983) (majority opinion); <u>id.</u> at 512 (McDonald, J., dissenting).

18

> advisory jury or with the trial judge and the Supreme Court of Florida. Our review, rather, is limited to ascertaining whether the result of the override scheme is arbitrary or discriminatory. Spaziano v. Florida, 468 U.S. 447, 465, 104 S. Ct. 3154, 3165, 82 L. Ed. 2d 340 (1984). Lusk contends that we should grant only limited deference to state override proceedings. On the contrary, to the extent that those proceedings do not produce an arbitrary or discriminatory result, the Constitution is not violated, and we will not second-guess the state courts on a matter of state law. The state courts concluded that there were no reasonable bases for the jury's recommendation despite the fact that both the jury as advisor and the judge as sentencer were made aware of mitigating factors. On the facts of this case, we do not find that the result of the application of Tedder was arbitrary or irrational.

Id. at 341-42 (citations omitted; emphasis added).

Similarly, in Francis v. Dugger, 908 F.2d 696, 704 (11th Cir. 1990), this Court rejected the death-sentenced petitioner's argument that the jury override in his Florida case violated the Eighth and Fourteenth Amendments because certain mitigating circumstances in the record furnished a reasonable basis for the jury's advisory sentence of life imprisonment. We reiterated that a federal court may not second-guess whether the state courts complied with the mandate of Tedder and concluded that the jury override in petitioner Francis's case was not arbitrary or discriminatory. Id. We noted that, under Florida law, "the mere presence of mitigating evidence does not automatically provide a reasonable basis for the jury's recommendation." Id. (citing Pentecost v. State, 545 So. 2d 861, 863 n.3 (Fla. 1989)); accord Mills v. Singletary, 161 F.3d 1273, 1283 (11th Cir. 1998).

19

Here, Marshall's death sentence was not imposed in an arbitrary or discriminatory fashion. "Florida's override scheme has been upheld as constitutional precisely because the capital sentencing scheme 'has struck a reasonable balance between sensitivity to the individual and his circumstances and ensuring that the penalty is not imposed arbitrarily or discriminatorily,'" Bolender, 16 F.3d at 1571 (quoting Spaziano, 468 U.S. at 464, 104 S. Ct. at 3164), and the Florida courts followed that scheme in Marshall's case. After the jury issued its advisory sentence, the state trial court conducted an independent review of the facts relating to Marshall's character and the nature of his crime and concluded that there were "insufficient mitigating circumstances to outweigh the aggravating circumstances" and that "[t]he facts supporting this conclusion are so clear and convincing that no reasonable person could differ." The Florida Supreme Court reviewed the state trial court's jury override and concluded that the override procedure was properly followed and was not arbitrarily applied. Marshall I, 604 So. 2d at 805-06. As the Florida Supreme Court pointed out, Marshall at age 24 was already a nine-times-convicted violent felon under a sentence of 46 years' imprisonment. Although under a very long sentence, Marshall viciously beat a man to death while he was restrained and pleading for mercy. The victim was found lying face-down with his hands bound behind his back and his ankles were

20

restrained. The victim received no fewer than 25 blows, and death was caused by 6 blows to the back of his head. Nothing supported that Marshall acted in self-defense or killed the victim in the heat of the fight. Marshall presented little, if anything, in the way of mitigation.

Marshall argues that the state courts arbitrarily applied the Tedder standard for overriding the jury's advisory verdict of life imprisonment because the facts suggesting a death sentence for Marshall were not so clear and convincing that no reasonable person could differ. Marshall contends that this Tedder misapplication was a federal constitutional violation because Spaziano made the Eighth Amendment validity of a death sentence arising from a jury override dependent on a proper application of "the significant safeguard the Tedder standard affords a capital defendant in Florida." Spaziano, 468 U.S. at 465, 104 S. Ct. at 3165. Therefore, Marshall argues, when the state trial court overrode the jury's recommendation and the Florida Supreme Court affirmed his death sentence, their decisions not only misapplied Tedder but also violated clearly established federal law as enunciated in Spaziano.

Marshall's arguments rest upon a fundamental misreading of Spaziano. Despite what Marshall contends, Spaziano did not make proper application of the Tedder standard a federal constitutional requirement. Not only does the language

21

in Spaziano make this clear, but also the Supreme Court, in fact, has expressly said so. In Harris v. Alabama, 513 U.S. 504, 115 S. Ct. 1031 (1995), the Supreme Court upheld Alabama's capital sentencing scheme, which like Florida's required jury participation in sentencing but gave ultimate sentencing authority to the trial judge, but which unlike Florida's Tedder standard required only that the trial judge "consider" the jury's recommendation. Id. at 508-15, 115 S. Ct. at 1034-37. In doing so, the Supreme Court explained that its approval of Florida's Tedder standard did not make that standard an Eighth Amendment requirement:

> In various opinions on the Florida statute we have spoken favorably of the deference that a judge must accord the jury verdict under Florida law. While rejecting an ex post facto challenge in Dobbert v. Florida, 432 U.S. 282, 294, 97 S. Ct. 2290, 2298, 53 L. Ed. 2d 344 (1977), we noted the "crucial protection" provided by the standard of Tedder v. State. In the same fashion, in dismissing Spaziano's argument that the Tedder standard was wrongly applied by the lower courts in his case, we stated:
>> "This Court already has recognized the significant safeguard the Tedder standard affords a capital defendant in Florida. We are satisfied that the Florida Supreme Court takes that standard seriously and has not hesitated to reverse a trial court if it derogates the jury's role."
>> These statements of approbation, however, do not mean that the Tedder standard is constitutionally required. As we stated in Spaziano immediately following the passage quoted above: "Our responsibility, however, is not to second-guess the deference accorded the jury's recommendation in a particular case, but to ensure that the result of the process is not arbitrary or discriminatory." 468 U.S., at 465, 104 S. Ct., at 3165. We thus made clear that, our praise for Tedder notwithstanding, the hallmark of the analysis is not the particular weight a State chooses to place upon the jury's advice, but whether

22

the scheme adequately channels the sentencer's discretion so as to prevent arbitrary results.

Id. at 511, 115 S. Ct. at 1035 (citations omitted; emphasis added).[11]

Simply put, the Supreme Court has told us twice that a federal court on § 2254 habeas review may not "second-guess" a Florida state court's application of the Tedder standard in a jury-override case. Id.; Spaziano, 468 U.S. at 465, 104 S. Ct. at 3165. Rather, the federal constitutional question is only whether the Florida state courts' application of the Tedder standard was arbitrary or discriminatory or, stated another way, whether it produced an arbitrary or discriminatory result. Harris, 513 U.S. at 511, 115 S. Ct. at 1035; Spaziano, 468 U.S. at 465, 104 S. Ct. at 3165. Moreover, AEDPA adds an additional layer of deference to our review because we examine only whether the Florida Supreme Court's decision – that the state trial judge did not arbitrarily apply the Tedder standard – was contrary to, or an unreasonable application of, clearly established federal law evidenced in a holding of the United States Supreme Court. See 28 U.S.C. § 2254(d)(1); see also Smith, 130 S. Ct. at 1392; Haynes, 130 S. Ct. at 1173.

In this case, nothing in the record suggests the state courts' application of the

---

[11]The Supreme Court concluded that "[t]he Constitution permits the trial judge, acting alone, to impose a capital sentence [and it] is thus not offended when a State further requires the sentencing judge to consider a jury's recommendation and trusts the judge to give it the proper weight." Harris, 513 U.S. at 515, 115 S. Ct. at 1037.

23

jury-override procedure was arbitrary or discriminatory or that such application produced an arbitrary or discriminatory death sentence. Under AEDPA, and indeed even under de novo review, Marshall has not shown he is entitled to federal habeas relief.

## IV. CONCLUSION

We affirm the district court's denial of Marshall's § 2254 petition.

**AFFIRMED.**